87 Cal.Rptr.2d 682 (1999)
981 P.2d 525
21 Cal.4th 424
The PEOPLE, Plaintiff and Respondent,
v.
Sherman ALLEN, Defendant and Appellant.
No. S054125.
Supreme Court of California.
August 19, 1999.
Rehearing Denied October 6, 1999.
*683 Harvey L. Goldhammer, Glendale, under appointment by the Supreme Court, for Defendant and Appellant.
Michael P. Judge, Public Defender, Alex Ricciardulli and Albert J. Menaster, Deputy Public Defenders, for Los Angeles County Public Defender's Office as Amicus Curiae on behalf of Defendant and Appellant.
Michael S. Ogul, Oakland, for California Attorneys for Criminal Justice as Amicus Curiae on behalf of Defendant and Appellant.
Daniel E. Lungren and Bill Lockyer, Attorneys General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Kenneth C. Byrne, Sanjay T. Kumar, Lance E. Winters, Pamela C. Hamanaka, Susan C. Diamond and Scott Taryle, Deputy Attorneys General, for Plaintiff and Respondent.
WERDEGAR, J.
We held in People v. Sumstine (1984) 36 Cal.3d 909, 206 Cal.Rptr. 707, 687 P.2d 904 *684 (Sumstine) that a criminal defendant, charged with having suffered a prior felony conviction, may move in the trial court to strike the alleged prior conviction on the ground the trial court in the prior proceeding failed to comply with the defendant's Boykin-Tahl rights. (Boykin v. Alabama (1969) 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (Boykin); In re Tahl (1969) 1 Cal.3d 122, 81 Cal.Rptr. 577, 460 P.2d 449 (Tahl).) Ten years after Sumstine, the United States Supreme Court held the federal Constitution does not authorize a criminal defendant to move in the trial court to strike an alleged prior state felony conviction unless he or she was denied the right to counsel in the prior proceeding. (Custis v. United States (1994) 511 U.S. 485, 114 S.Ct. 1732, 128 L.Ed.2d 517 (Custis).) We granted review in this case to address a division in our Courts of Appeal regarding whether, as a result of Custis and subsequent decisions, we should overrule Sumstine, supra. As we explain below, although we find Sumstine survives Custis, the motion to strike procedure is available to challenge only those prior felony convictions suffered after we decided Tahl. Because defendant's prior felony conviction occurred a few months before we decided Tahl, we conclude the trial court correctly, albeit for the wrong reason, ruled defendant could not challenge his prior conviction.

FACTS
Defendant was charged with violating Health and Safety Code section 11352, subdivision (a) (sale of a controlled substance). In addition, the information alleged as sentencing enhancements that defendant had suffered a felony conviction for robbery in 1969 (Pen.Code, § 667, subds.(b)-(i)) and had twice previously served a prison term (id., § 667.5, subd. (b)). Trial of guilt and the enhancement allegations was bifurcated. A jury found defendant guilty of selling drugs; the trial court then found true the allegation defendant had suffered the prior felony conviction (i.e., a "strike"), as well as the allegations defendant had served two prior prison terms.
At the sentencing hearing, defendant moved to strike his prior robbery conviction on Boykin-Tahl grounds, claiming he had not, in the prior proceeding, been informed that by pleading guilty he was forfeiting his right to a jury trial, to confront and cross-examine witnesses and to be free of compelled self-incrimination. The prosecutor opposed the motion, arguing criminal defendants could no longer use the motion to strike procedure to collaterally attack the validity of a prior felony conviction on Boykin-Tahl grounds, citing Custis, supra, 511 U.S. 485, 114 S.Ct. 1732, 128 L.Ed.2d 517. The trial court agreed with the prosecutor, denied the motion and sentenced defendant to prison for a term of ten years, calculated as the middle term of four years for the drug crime, doubled to eight years for the prior strike, and two additional years for the two prior prison terms.
The case then began a winding journey through our appellate system. Defendant appealed, and the Court of Appeal affirmed, finding Custis, supra, 511 U.S. 485, 114 S.Ct. 1732, 128 L.Ed.2d 517, had superseded Sumstine, supra, 36 Cal.3d 909, 206 Cal.Rptr. 707, 687 P.2d 904, eliminating the motion to strike procedure as a method of raising a Boykin-Tahl challenge to a prior conviction. Defendant sought a rehearing, citing the recently published Court of Appeal decision in Garcia v. Superior Court (Cal.App.), which found Custis was not controlling.[1] The Court of Appeal granted rehearing and issued a new opinion, this time reversing the judgment and remanding to the trial court. We granted review and held the case for *685 Garcia, which was then pending. (See Cal. Rules of Court, rule 29.2(c).)
We filed our opinion in Garcia, supra, 14 Cal.4th 953, 59 Cal.Rptr.2d 858, 928 P.2d 572, on January 9, 1997, finding the rationale of Custis, supra, 511 U.S. 485, 114 S.Ct. 1732, 128 L.Ed.2d 517, was persuasive for motions to strike based on ineffective assistance of counsel. We thereafter transferred the instant case to the Court of Appeal for reconsideration in light of Garcia. That court filed an unpublished opinion and, relying on the rationale of Garcia and Custis, concluded criminal defendants were no longer authorized to move to strike, on Boykin-Tahl grounds, their prior felony convictions. Because other Courts of Appeal had reached a contrary conclusion, we again granted review.

DISCUSSION

A. Background
Trial courts commonly rely on the existence of prior felony convictions to increase the sentences meted out to criminal defendants. (See, e.g., Pen.Code, §§ 667, subd. (a)(1) [five-year enhancement for prior serious felony conviction], 667.51 [five-year enhancement for prior sex crime if presently convicted of lewd acts with a child in violation of Penal Code, section 288], 667.6 [five-year enhancement for prior sex crime if presently convicted of enumerated sex crime], 667.71, subd. (b) [term of twenty-five years to life for habitual sex offenders].)
Most recently, both the electorate and our Legislature have decided to treat an offender's prior felony convictions as justifying a substantially increased prison term. Thus, under most circumstances, a single prior serious felony conviction will double the offender's sentence, and two prior serious felony convictionsthe so-called "Three Strikes and You're Out" lawleads to a sentence of at least twenty-five years to life in prison. (Pen.Code, §§ 667, subds. (b)-(i), added by the Leg., eff. Mar. 7, 1994, 1170.12, added by initiative measure, approved Nov. 8, 1994.) In California, then, the allegation and proof of prior serious felony convictions have assumed a significant role in the calculation of a criminal offender's minimum term.
The United States Supreme Court has decided, however, that a trial court, when sentencing a criminal defendant, may not rely on a prior felony conviction obtained in violation of the defendant's constitutional rights. Thus, in Burgett v. Texas (1967) 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319, the high court ruled a Texas state court unconstitutionally relied on a defendant's prior felony conviction to invoke that state's recidivist offender law, where the evidence of the prior conviction demonstrated neither that the defendant was represented by counsel in the earlier proceeding (see Gideon v. Wainwright (1963) 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (Gideon)) nor that he had waived such assistance (Burgett v. Texas, supra, 389 U.S. at pp. 114-115, 88 S.Ct. 258; see also Johnson v. Mississippi (1988) 486 U.S. 578, 108 S.Ct. 1981, 100 L.Ed.2d 575 [Eighth Amendment required reconsideration of death penalty imposed, in part, in reliance on a subsequently vacated prior felony conviction]). In short, if a state desires to rely on a defendant's prior felony conviction to enhance his or her sentence, the prior conviction must be constitutionally valid. (Garcia, supra, 14 Cal.4th at p. 959, 59 Cal.Rptr.2d 858, 928 P.2d 572.)
To assure the constitutional validity of prior felony convictions used to enhance a criminal defendant's sentence for a current crime, this court long ago decided that the defendant was entitled to challenge such priors in a petition for a writ of habeas corpus. (In re Woods (1966) 64 Cal.2d 3, 48 Cal.Rptr. 689, 409 P.2d 913; In re Luce (1966) 64 Cal.2d 11, 48 Cal.Rptr. 694, 409 P.2d 918.) If the defendant could establish the prior convictions were invalid, he was entitled to be resentenced.
A year later, we considered whether a defendant charged with a prior felony conviction *686 was limited to proceeding, after final judgment, by way of habeas corpus, or could instead challenge the constitutional validity of the alleged prior conviction in his current trial. In People v. Coffey (1967) 67 Cal.2d 204, 60 Cal.Rptr. 457, 430 P.2d 15 (Coffey), the defendant was charged, inter alia, with having suffered a prior felony conviction in Oklahoma. He made a pretrial motion to dismiss the allegation, claiming that in the proceedings leading to the Oklahoma conviction he had been denied the right to legal counsel. This court held the trial court erred when it denied the motion to strike, explaining that "to the extent that statutory machinery relating to penal status or severity of sanction is activated by the presence of prior convictions, it is imperative that the constitutional basis of such convictions be examined if challenged by proper allegations." (Id. at pp. 214-215, 60 Cal.Rptr. 457, 430 P.2d 15.) And the challenge, we held, need not be made in a separate proceeding, but may properly be made in the present proceeding by a pretrial motion to strike the prior conviction. Citing concerns of judicial economy, we noted that "it is clearly in the interest of efficient judicial administration that attacks upon the constitutional basis of prior convictions be disposed of at the earliest possible opportunity, and we are therefore of the view that, if the issue is properly raised at or prior to trial, it must be determined by the trial court." (Id. at p. 215, 60 Cal.Rptr. 457, 430 P.2d 15.)
In essence, Coffey authorized defendants to institute in their current trial a collateral attack on a prior felony conviction, which previously had been permissible only by filing a petition for a writ of habeas corpus. Our decision was not based on an interpretation of either the federal or state Constitution, but on this court's assessment of "efficient judicial administration." (See Garcia, supra, 14 Cal.4th at p. 963, 59 Cal.Rptr.2d 858, 928 P.2d 572.) In today's parlance, we would characterize the rule as a judicially established rule of criminal procedure. (Id. at p. 964, 59 Cal. Rptr.2d 858, 928 P.2d 572.)
The question later arose whether the Coffey motion to strike procedure was available to challenge an alleged prior felony conviction on constitutional grounds other than denial of counsel. We answered that question in the affirmative in Sumstine, supra, 36 Cal.3d 909, 206 Cal. Rptr. 707, 687 P.2d 904. In that case, the defendant moved to strike his prior felony conviction on grounds he had not been informed, before pleading guilty to the prior crime, of his right to a jury, to confront witnesses and to be free of compelled self-incrimination (Boykin, supra, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274; Tahl, supra, 1 Cal.3d 122, 81 Cal.Rptr. 577, 460 P.2d 449), and that the record did not evidence his waiver of these rights. Respondent, represented by the Attorney General, argued the motion to strike procedure announced in Coffey, supra, 67 Cal.2d 204, 60 Cal.Rptr. 457, 430 P.2d 15, should be confined to claims of denial of counsel, "because of the peculiar importance of the Sixth Amendment right to counsel." (Sumstine, supra, at p. 918, 206 Cal.Rptr. 707, 687 P.2d 904.)
We disagreed with the Attorney General's proposed narrow reading of Coffey and instead chose to interpret the decision more broadly, noting "our concern in Coffey that prior convictions obtained in violation of any of a defendant's constitutional rights not be used to enhance a prison sentence...." (Sumstine, supra, 36 Cal.3d at pp. 918-919, 206 Cal.Rptr. 707, 687 P.2d 904, italics added.) By way of example, we observed in a footnote that we had previously "permitted defendants to raise [claims of] inadequate assistance of counsel on a Coffey motion." (Sumstine, supra, at p. 919, fn. 6, 206 Cal.Rptr. 707, 687 P.2d 904, citing People v. Coleman (1969) 71 Cal.2d 1159, 1169, 80 Cal.Rptr. 920, 459 P.2d 248.) We thus concluded a defendant could raise a Boykin-Tahl claim in a motion to strike.
*687 Six years after Sumstine, we held a capital defendant could use the Coffey motion to strike procedure to challenge a prior murder conviction, charged as a special circumstance (Pen.Code, § 190.2, subd. (a)(2)), on the grounds the defendant's Boykin-Tahl rights had been infringed and his prior guilty plea involuntary because he was intoxicated at the time of the plea. (Curl v. Superior Court (1990) 51 Cal.3d 1292, 1296, 276 Cal.Rptr. 49, 801 P.2d 292 (Curl).)
History has shown that, at least in non-capital cases, Sumstine, supra, 36 Cal.3d 909, 206 Cal.Rptr. 707, 687 P.2d 904, represented the high-water mark in this area of motions to strike. Retreat from the notion that a criminal defendant may, in his current trial, challenge a prior felony conviction on "any" constitutional ground (id. at p. 918, 206 Cal.Rptr. 707, 687 P.2d 904) began with the United States Supreme Court decision in Custis, supra, 511 U.S. 485, 114 S.Ct. 1732, 128 L.Ed.2d 517. Custis involved a criminal prosecution under the federal Armed Career Criminal Act of 1984 (18 U.S.C. § 924(e) (ACCA)). For an offender thrice convicted previously of a violent or serious drug-related felony, the ACCA increased the penalty for possession of a firearm from a mandatory 10-year term to a minimum term of 15 years and a maximum term of life in prison without parole. The government alleged the defendant in Custis came within the terms of the ACCA because he had suffered a 1985 conviction for robbery in Pennsylvania, and a 1985 conviction for burglary and a 1989 conviction for attempted burglary, both in Maryland.
The defendant in Custis argued his prior Maryland felony convictions were constitutionally invalid. Regarding his 1985 burglary conviction, he claimed he had received constitutionally ineffective assistance of counsel and that his plea was not knowing and intelligent as required by Boykin, supra, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274. Regarding his 1989 attempted burglary conviction, he similarly contended he had been provided ineffective assistance of counsel and, in addition, that he had had a "`stipulated facts'" trial that was tantamount to a guilty plea, but had not been given adequate warnings of the constitutional rights he forfeited thereby. (Cf. Bunnell v. Superior Court (1975) 13 Cal.3d 592, 119 Cal.Rptr. 302, 531 P.2d 1086.) The defendant argued the federal Constitution guaranteed him the right to challenge, in his present trial, the constitutional validity of his prior Maryland felony convictions. (Custis, supra, 511 U.S. at p. 493, 114 S.Ct. 1732.)
The high court disagreed, explaining the federal Constitution did not guarantee a criminal defendant the right, in the present trial, to challenge a prior conviction on any ground other than denial of counsel, sometimes called a Gideon claim (Gideon, supra, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799). The high court reached this conclusion after considering three factors. First, denial of one's Sixth Amendment right to counsel is a "unique constitutional defect" (Custis, supra, 511 U.S. at p. 496, 114 S.Ct. 1732), which the court previously had recognized rises to the level of a "jurisdictional defect." (Ibid., citing Johnson v. Zerbst (1938) 304 U.S. 458, 58 S.Ct, 1019, 82 L.Ed. 1461.)
Second, in the court's view, "[e]ase of administration also support[ed] the distinction [between denial of the right to counsel and denial of other constitutional rights]." (Custis, supra, 511 U.S. at p. 496, 114 S.Ct. 1732.) "[F]ailure to appoint counsel at all will generally appear from the judgment roll itself, or from an accompanying minute order. But determination of claims of ineffective assistance of counsel, and failure to assure that a guilty plea was voluntary, would require sentencing courts to rummage through frequently nonexistent or difficult to obtain state-court transcripts or records that may date from another era, and may come from any one of the 50 States." (Ibid.)
A third reason for the court's decision denying all but Gideon challenges to alleged *688 prior felony convictions was the government's interest in the finality of judgments. Such collateral challenges "`undermine confidence in the integrity of [Supreme Court] procedures'" (Custis, supra, 511 U.S. at p. 497, 114 S.Ct. 1732, quoting United States v. Addonizio (1979) 442 U.S. 178, 184, fn. 11, 99 S.Ct. 2235, 60 L.Ed.2d 805), especially in cases, such as Custis, in which the defendant pleaded guilty to the crime in the prior proceeding. The high court expressly stated, however, that the defendant was free to return to state court and attempt to vacate the conviction in that forum. (Custis, supra, at p. 497, 114 S.Ct. 1732; Garcia, supra, 14 Cal.4th at p. 962, 59 Cal. Rptr.2d 858, 928 P.2d 572; see Nichols v. United States (1994) 511 U.S. 738, 765, 114 S.Ct. 1921, 128 L.Ed.2d 745 (dis. opn. of Ginsburg, J.) [the issue in Custis "was where, not whether, the defendant could attack a prior conviction for constitutional infirmity" (italics in original)].)
Custis led to a reexamination of California precedent on the subject. First, in People v. Horton (1995) 11 Cal.4th 1068, 47 Cal.Rptr.2d 516, 906 P.2d 478, a capital case, we concluded that "Custis neither compels nor justifies a modification of existing California law governing a collateral attack, in a capital proceeding, upon a prior conviction that the prosecution has alleged as a special circumstance rendering the defendant eligible for the death penalty." (Id. at p. 1134, 47 Cal.Rptr.2d 516, 906 P.2d 478, italics in original.) In reaffirming Curl, supra, 51 Cal.3d 1292, 276 Cal.Rptr. 49, 801 P.2d 292, we emphasized the prior conviction in Horton was alleged as a special circumstance making the defendant eligible for the death penalty, and that Custis "did not address the question of the appropriate scope of a collateral challenge in such a setting." (Horton, supra, at p. 1134, 47 Cal.Rptr.2d 516, 906 P.2d 478.) In capital cases, we concluded, a collateral challenge to an alleged prior conviction "may not properly be confined to a claim of Gideon error [denial of counsel], but may be based upon at least some other types of fundamental constitutional flaws." (Id. at p. 1135, 47 Cal. Rptr.2d 516, 906 P.2d 478, italics in original.) We cautioned, however, that we had, in Horton, "no occasion ... to determine whether, or in what respect, the policy considerations set forth by the majority in Custis should affect collateral attacks on prior convictions in a noncapital setting." (Id. at p. 1134, 47 Cal.Rptr.2d 516, 906 P.2d 478.)
Although Horton thus reserved the question of Custis's applicability in the noncapital setting, we turned to that precise question little over a year later. In Garcia, supra, 14 Cal.4th 953, 59 Cal. Rptr.2d 858, 928 P.2d 572, the defendant was charged with a drug-related crime and with having suffered two prior serious felony convictions for burglary. He made a pretrial motion to strike one of the prior burglary convictions, claiming his guilty plea in the previous case was induced by the ineffective assistance of his defense attorney. In his motion, the defendant contended he would not have entered the guilty plea had he received competent legal advice. (Id. at pp. 957-958, 59 Cal. Rptr.2d 858, 928 P.2d 572.)
In resolving the defendant's claim in Garcia, we observed he was not raising a denial of counsel claim and thus was not entitled under the federal Constitution to use the motion to strike procedure (Custis, supra, 511 U.S. 485, 114 S.Ct. 1732, 128 L.Ed.2d 517). We reached the same conclusion under the California Constitution, reasoning that no previous authority had relied on our state charter to authorize the motion to strike procedure, and that, in any event, the defendant failed to present a "`cogent reason[]'" for construing the state Constitution differently than its federal counterpart. (Garcia, supra, 14 Cal.4th at p. 963, 59 Cal.Rptr.2d 858, 928 P.2d 572; see Raven v. Deukmejian (1990) 52 Cal.3d 336, 353, 276 Cal.Rptr. 326, 801 P.2d 1077.)
*689 Having determined the absence of any state or federal constitutional entitlement to use the motion to strike procedure (aside from Gideon claims), we also declined to create a judicially established rule of criminal procedure to authorize motions to strike prior felony convictions based on ineffective assistance of counsel. (Garcia, supra, 14 Cal.4th at p. 964, 59 Cal.Rptr.2d 858, 928 P.2d 572.) Our reasoning was twofold. First, although Sumstine had, in dictum, suggested the motion to strike procedure was also available for claims of ineffective assistance of counsel (Sumstine, supra, 36 Cal.3d at p. 919, fn. 6, 206 Cal.Rptr. 707, 687 P.2d 904), we found the Garcia defendant's reliance on that dictum was unjustified: "[T]he court in Sumstine was not faced with a challenge to a prior conviction based upon the ground of ineffective assistance of counsel; thus the decision in Sumstine had no occasion to, and did not, determine specifically that a defendant properly could employ such a motion to strike to raise an ineffective-assistance-of-counsel claim." (Garcia, supra, at p. 964, 59 Cal.Rptr.2d 858, 928 P.2d 572.)
Second, we observed that, in distinguishing denial of counsel claims from other constitutional claims, the Custis court found the ease of determining the merits of such a claim from the record of the prior proceeding was a factor "[o]f particular relevance." (Garcia, supra, 14 Cal.4th at p. 961, 59 Cal.Rptr.2d 858, 928 P.2d 572.) Turning to the question of the administrative burden on the trial courts, we concluded "the effective administration of criminal justice would not be furthered, but rather would face serious disruption, ifin the course of the proceedings related to a current offensethe trial court were required to entertain and adjudicate an attack on the validity of a challenged prior conviction based upon a claim of ineffective assistance of counsel." (Id. at p. 964, 59 Cal.Rptr.2d 858, 928 P.2d 572.) "Such a claim often will necessitate a factual investigation with regard to counsel's actions, omissions, and strategic decisions, requiring the parties and the court to reconstruct events possibly remote in time, and to scour potentially voluminous records, substantially delaying the proceedings related to the current offense." (Id. at p. 965, 59 Cal.Rptr.2d 858, 928 P.2d 572.)
These concerns for "judicial efficiency" (Garcia, supra, 14 Cal.4th at p. 966, 59 Cal.Rptr.2d 858, 928 P.2d 572) and the "effective administration of criminal justice" (id. at p. 964, 59 Cal.Rptr.2d 858, 928 P.2d 572) convinced us that creating a judicial rule of criminal procedure to permit criminal defendants to move to strike prior felony convictions due to alleged ineffective assistance of counsel in the prior proceedings was unwise. Accordingly, we concluded the trial court in Garcia properly refused to entertain a motion to strike on that ground.[2] We now turn to the issue in this case: can a noncapital criminal defendant, after Custis and Garcia, use the motion to strike procedure to challenge a prior felony conviction on the ground he was denied his Boykin-Tahl rights in the prior proceeding?

B. Boykin-Tahl and Sumstine

In Boykin, supra, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274, the defendant was charged in Alabama with five counts of robbery. Represented by court-appointed counsel, the defendant pleaded guilty and was sentenced to suffer the death penalty. The trial record was silent on the question of whether the defendant was aware of the *690 constitutional rights he waived by pleading guilty. Although the state supreme court affirmed the conviction, the United States Supreme Court reversed; the court explained that to ensure the plea was made intelligently and voluntarily, the record must show the defendant was made aware of three constitutional rights he was waiving by pleading guilty: the right to a jury trial, the right to confront the witnesses against him, and the right to be free from compelled self-incrimination. The high court held that an intelligent and voluntary waiver would not be presumed from a silent record. In Tahl, supra, 1 Cal.3d 122, 81 Cal.Rptr. 577, 460 P.2d 449, this court explained that, in light of Boykin, "each of the three rights mentionedself-incrimination, confrontation, and jury trialmust be specifically and expressly enumerated for the benefit of and waived by the accused prior to acceptance of his guilty plea." (Id. at p. 132, 81 Cal.Rptr. 577, 460 P.2d 449.)
As explained, ante, Sumstine, supra, 36 Cal.3d 909, 206 Cal.Rptr. 707, 687 P.2d 904, permits a criminal defendant to challenge the validity, in his present trial, of a prior felony conviction on Boykin-Tahl grounds. Although to enhance a criminal defendant's sentence with a prior conviction that was itself obtained in violation of the Constitution is unconstitutional (Burgett v. Texas, supra, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319), it is not unconstitutional with the exception of denial of counsel claimsto require a defendant to litigate the validity of the prior conviction in a separate proceeding, such as on habeas corpus. (Custis, supra, 511 U.S. at p. 497, 114 S.Ct. 1732; Garcia, supra, 14 Cal.4th at p. 966, 59 Cal.Rptr.2d 858, 928 P.2d 572.) Our decision in Sumstine thus was not based on constitutional imperatives, but on the policy judgment, first announced in Coffey, supra, 67 Cal.2d 204, 60 Cal.Rptr. 457, 430 P.2d 15, that "it is clearly in the interest of efficient judicial administration that attacks upon the constitutional basis of prior convictions be disposed of at the earliest possible opportunity, and we are therefore of the view that, if the issue is properly raised at or prior to trial, it must be determined by the trial court." (Id. at p. 215, 60 Cal.Rptr. 457, 430 P.2d 15, italics added.) We not only reaffirmed that policy decision in Sumstine, supra, 36 Cal.3d at page 920, 206 Cal.Rptr. 707, 687 P.2d 904, we again did so in Curl, supra, 51 Cal.3d at page 1302, 276 Cal.Rptr. 49, 801 P.2d 292.
Sumstine directed trial courts to follow the following procedure: When a defendant makes sufficient allegations that his conviction, by plea, in the prior felony proceedings was obtained in violation of his constitutional Boykin-Tahl rights, the trial court must hold an evidentiary hearing. At the hearing, the prosecution bears the initial burden of producing evidence that the defendant did indeed suffer the conviction. The defendant must then produce evidence to demonstrate his Boykin-Tahl rights were infringed. The prosecution then has the right to rebuttal, at which point reliance on a silent record will not be sufficient. (Sumstine, supra, 36 Cal.3d at p. 923, 206 Cal.Rptr. 707, 687 P.2d 904; see People v. Pride (1992) 3 Cal.4th 195, 256, 10 Cal.Rptr.2d 636, 833 P.2d 643 [evidence of trial judge's "`habit and custom'" of taking proper waivers relevant]; People v. Soto (1996) 46 Cal. App.4th 1596, 1605-1607, 54 Cal.Rptr.2d 593 [defendant's conclusory allegations insufficient to warrant a hearing]; People v. Johnson (1990) 217 Cal.App.3d 978, 983, 266 Cal.Rptr. 221 [defendant failed to produce evidence his constitutional rights were violated].) We explained the process in more detail in Curl, supra, 51 Cal.3d 1292, 276 Cal.Rptr. 49, 801 P.2d 292. In that case, we emphasized that a Sumstine motion is a collateral attack on a presumptively final conviction. (Curl, supra, at p. 1303, 276 Cal.Rptr. 49, 801 P.2d 292.) Accordingly, the People need only make "a prima facie showing of the existence of the prior conviction" (id. at p. 1304, fn. 7, 276 Cal.Rptr. 49, 801 P.2d 292), whereupon the burden shifts to the defendant, who *691 bears the burden of proving the constitutional invalidity of the conviction (ibid.).[3] In order to rely on the prior conviction in sentencing, of course, the People retain the burden of proving, beyond a reasonable doubt, that the defendant suffered the conviction. (Curl, supra, at p. 1304, fn. 7, 276 Cal.Rptr. 49, 801 P.2d 292.)
The Attorney General argued in Sumstine that this procedure, requiring as it did the holding of an evidentiary hearing, would be "unnecessarily time-consuming" and that "`[t]o explore matters other than the easily determined fact of representation by, or waiver of, counsel couldand no doubt wouldrequire a lengthy recess of the trial in order to procure witnesses and other evidence with the resultant possibility of frequent declaration of mistrials.'" (Sumstine, supra, 36 Cal.3d at p. 919, fn. 6, 206 Cal.Rptr. 707, 687 P.2d 904, quoting People v. Vienne (1973) 30 Cal. App.3d 266, 272, 105 Cal.Rptr. 584.) We disagreed: "To prevent such lengthy interruptions we required courts to put on the record the questioning of the defendant concerning his Boykin/Tahl rights in order to preserve `a record adequate for any review that may be later sought.' (Boykin, supra, 395 U.S. at p. 244, 89 S.Ct. 1709; italics added.) If a proper record existed, Boykin/Tahl claims could as easily be determined as right to counsel claims." (Sumstine, supra, at p. 919, fn. 6, 206 Cal.Rptr. 707, 687 P.2d 904.) In short, we expressly considered in Sumstine the People's "ease of administration" argument and found it wanting.
Normally, principles of stare decisis would require we adhere to the rule in Sumstine, at least in the absence of persuasive evidence the policy judgment on which it is based has proved false as an empirical matter, or that post-Sumstine authority from the United States Supreme Court or this court casts doubt on Sumstine's reasoning. (See, e.g., Moradi-Shalal v. Fireman's Fund Ins. Companies (1988) 46 Cal.3d 287, 296-297, 250 Cal. Rptr. 116, 758 P.2d 58; People v. Anderson (1987) 43 Cal.3d 1104, 1138-1141, 240 Cal.Rptr. 585, 742 P.2d 1306.) The Attorney General does not argue that Sumstine motions have proven to be an undue burden on the trial courts in the ensuing 15 years. He does contend, however, that superseding legal authority justifies reevaluation of the policy bases of our Sumstine decision. He relies primarily on People v. Howard (1992) 1 Cal.4th 1132, 5 Cal.Rptr.2d 268, 824 P.2d 1315 (Howard). As we explain, the Attorney General's reliance on Howard is misplaced.

C. Howard Is Not Dispositive
In the period immediately following the decisions in Boykin and Tahl, compliance with the rule of those cases required the trial record expressly to demonstrate (i) the defendant who was pleading guilty had been warned of the three specific constitutional rights he was forgoing, and (ii) that he had waived those rights. We expanded the reach of this rule, applying it to admissions of prior felony convictions alleged as enhancements for sentencing purposes (In re Yurko (1974) 10 Cal.3d 857, 112 Cal. Rptr. 513, 519 P.2d 561 (Yurko)), guilty pleas in misdemeanor cases (Mills v. Municipal Court. (1973) 10 Cal.3d 288, 110 Cal.Rptr. 329, 515 P.2d 273), submissions on preliminary examination transcripts that were tantamount to guilty pleas (People v. Levey (1973) 8 Cal.3d 648, 105 Cal. Rptr. 516, 504 P.2d 452) and, with the exception of warnings regarding the right to a jury trial, admissions under the juvenile court law (In re Ronald E., supra, 19 *692 Cal.3d 315, 137 Cal.Rptr. 781, 562 P.2d 684). In addition, during the post-Boykin-Tahl period, we treated the failure to comply with a defendant's Boykin-Tahl rights as requiring automatic reversal of the defendant's conviction. (See In re Ibarra (1983) 34 Cal.3d 277, 283, fn. 1, 193 Cal. Rptr. 538, 666 P.2d 980; People v. Wright (1987) 43 Cal.3d 487, 493-494, 233 Cal. Rptr. 69, 729 P.2d 260 [slow plea tantamount to a guilty plea].)
In 1992, however, we reevaluated the rule of automatic reversal. In Howard, supra, 1 Cal.4th 1132, 5 Cal.Rptr.2d 268, 824 P.2d 1315, the trial court failed to take Boykin-Tahl waivers before accepting the defendant's admission of the truth of a prior felony conviction allegation, thus committing what is known as Yurko error (Yurko, supra, 10 Cal.3d at p. 863, 112 Cal.Rptr. 513, 519 P.2d 561). We observed in Howard that, although this court had interpreted federal law to find a trial court's failure to place Boykin-Tahl waivers on the record required reversal without an inquiry into prejudice, "[i]n the 22 years since Tahl, our interpretation of federal law in that opinion has not garnered significant support in the federal courts. Indeed, the high court has never read Boykin as requiring explicit admonitions on each of the three constitutional rights. Instead, the court has said that the standard for determining the validity of a guilty plea `was and remains whether the plea represents a voluntary and intelligent choice among alternative courses of action open to the defendant.'" (Howard, supra, at p. 1177 [5 Cal.Rptr.2d 268, 824 P.2d 1315], quoting North Carolina v. Alford (1970) 400 U.S. 25, 31 [91 S.Ct. 160, 27 L.Ed.2d 162].) "`The new element added in Boykin' was not a requirement of explicit admonitions and waivers but rather `the requirement that the record must affirmatively disclose that a defendant who pleaded guilty entered his plea understandingly and voluntarily.'" (Howard supra, at p. 1177, 5 Cal.Rptr.2d 268, 824 P.2d 1315, quoting Brady v. United States (1970) 397 U.S. 742, 747-748, fn. 4, 90 S.Ct. 1463, 25 L.Ed.2d 747.) We noted that the vast majority of the federal circuit courts had reached the same conclusion. (See, e.g., United States v. Pricepaul (9th Cir.1976) 540 F.2d 417, 424-425.)
We thus concluded in Howard, supra, 1 Cal.4th at page 1178, 5 Cal.Rptr.2d 268, 824 P.2d 1315 that the Boykin-Tahl rule merely requires that "[t]he record must affirmatively demonstrate that the plea [that is, the admission of a prior conviction] was voluntary and intelligent under the totality of the circumstances." (Italics added.) Examining the record in Howard (the trial court's colloquy with defendant and his counsel), we concluded the defendant knew he had the right not to admit the prior felony conviction and, thus, not incriminate himself. After considering the totality of the circumstances, we held that despite the absence of explicit on-the-record waivers, the defendant's admission of the prior conviction was voluntary and intelligent. (Id. at p. 1180, 5 Cal.Rptr.2d 268, 824 P.2d 1315.) Accordingly, we found the Yurko error was harmless.
Respondent suggests that, after Howard, the scope of the evidentiary hearing authorized by Sumstine has been greatly expanded, requiring the trial court to engage in a wide-ranging and fact-intensive inquiry into the totality of the circumstances of a prior plea. This change, respondent argues, requires we reevaluate the policy basis of Sumstine. This argument is based on a fundamental misunderstanding of Howard, which addressed the standard of review for Yurko error on direct appeal.
Both before and after Howard, an appellate court, faced with a claim of Yurko error, was limited to an examination of the trial record. Before Howard, however, if a criminal defendant raised a claim of Yurko error on direct appeal, the appellate court was required to examine only the transcript of the hearing in which the trial court accepted the admission to determine if the proper admonitions and waivers appeared *693 on the face of the record. If they did not, appellate courts generally declared the admission of the prior convictions automatically invalid. (See, e.g., People v. Ray (1990) 220 Cal.App.3d 943, 945-950, 269 Cal.Rptr. 682; but see Howard, supra, 1 Cal.4th at p. 1175 & fn. 17, 5 Cal.Rptr.2d 268, 824 P.2d 1315, and cases cited [explaining the "apparent uncertainty" in the intermediate appellate courts over the applicable standard of review for Yurko error].)
After Howard, for an appellate court simply to determine the defendant had not been expressly told of his rights, nor expressly waived them was no longer sufficient. If the record failed to disclose proper advisements and waivers, the appellate court was required to determine further, based on the totality of the circumstances, whether the defendant's admission in any event was voluntarily and intelligently made. This determination required the appellate court to examine the entire proceeding. (See, e.g., People v. Torres (1996) 43 Cal.App.4th 1073, 1079-1082, 51 Cal.Rptr.2d 77 [totality of circumstances shows admission of prior convictions not voluntary or intelligent]; People v. Murillo (1995) 39 Cal.App.4th 1298, 1303-1304, 46 Cal.Rptr.2d 403 [record establishes knowing and voluntary waiver of constitutional rights]; People v. Moore (1992) 8 Cal.App.4th 411, 416-418, 10 Cal. Rptr.2d 286 [silent record precluded conclusion waiver was voluntary and intelligent].)[4] As in all appeals, however, this determination was limited to the trial record.
By contrast, a Sumstine motion, that is, a motion in the trial court to strike a prior conviction on Boykin-Tahl grounds, poses a fundamentally different situation. A Sumstine motion is a collateral attack on a prior conviction that, before Coffey, supra, 67 Cal.2d 204, 60 Cal.Rptr. 457, 430 P.2d 15, would have been raised in a separate proceeding by filing a petition for a writ of habeas corpus. The motivation animating our decision in Coffey, and then Sumstine, was one of judicial efficiency: if the defendant would in any event be able to challenge the validity of the prior conviction, it was more efficient to accelerate that determination to the current trial, rather than relegate it to a later habeas corpus proceeding after final judgment. Nothing in Howard undermines that initial policy decision.
That the situation addressed in Howard is distinct from that in Sumstine is illustrated by the different procedures applicable to each. Howard involved review on direct appeal, where the appellate court is restricted to an examination of the trial record. By contrast, when responding to a Sumstine motion, the trial court is specifically required to hold a hearing and take evidence on the voluntariness of the prior plea. Neither the defendant nor the prosecutor is limited to the face of the record in the prior proceeding, but may offer any evidence germane to the defendant's contention he was unaware of his rights when he pleaded in the prior proceeding. Indeed, the Sumstine procedure already incorporates the totality-of-the-circumstances approach outlined in Howard. Thus, in litigating a motion to strike, "it is not enough for [the defendant] to allege that the record of his prior conviction is silent regarding [his Boykin-Tahl] rights. He must affirmatively allege that at the time of his prior conviction he did not know of, or did not intelligently waive, such rights. And this does not end the matter: once such an allegation is made, the court must hold an evidentiary hearing... to determine the truth of the allegation." (Sumstine, supra, 36 Cal.3d at p. *694 914, 206 Cal.Rptr. 707, 687 P.2d 904, italics added.) Establishing the truth or falsity of the allegation in the evidentiary hearing, of course, will require the presentation of evidence outside the record. Thus, Sumstine anticipates that, in hearing a motion to strike, the trial court will examine the totality of the circumstances to determine the voluntariness and intelligence of the plea, much as the court would do if it were presiding over a hearing held in response to a petition for a writ of habeas corpus. Howard's rule of appellate review thus is indistinguishable from the review applied in motion hearings held pursuant to Sumstine.[5]
In sum, Howard, supra, 1 Cal.4th 1132, 5 Cal.Rptr.2d 268, 824 P.2d 1315, involves the proper standard of review on direct appeal and does not address collateral challenges to prior felony conviction allegations. Moreover, Howard does not change the nature of the hearing required by Sumstine, supra, 36 Cal.3d 909, 206 Cal.Rptr. 707, 687 P.2d 904. Finally, Howard does not call into question the basic policy determination made in Coffey, supra, 67 Cal.2d 204, 60 Cal.Rptr. 457, 430 P.2d 15, and Sumstine, that it is more efficient to accelerate collateral attacks on prior convictions to hear them in the trial proper than to wait for a later challenge on habeas corpus. For these reasons, we reject respondent's contention that Howard requires we abandon Sumstine.

D. Ease of Administration
The question remains whether, after Custis, supra, 511 U.S. 485, 114 S.Ct. 1732, 128 L.Ed.2d 517, and Garcia, supra, 14 Cal.4th 953, 59 Cal.Rptr.2d 858, 928 P.2d 572, our decision in Sumstine recognizing a judicially declared rule of criminal procedure permitting the motion to strike procedure for Boykin-Tahl grounds is still sound. Both Custis and Garcia identify the ease of administration of the motion to strike procedure as a key factor in deciding whether to permit a defendant to mount, in his current trial, a collateral attack on a prior felony conviction. (Custis, supra, at p. 496, 114 S.Ct. 1732; Garcia, supra, at p. 964, 59 Cal.Rptr.2d 858, 928 P.2d 572.) Thus, referring to a Gideon claim, the high court explained that determining whether counsel had been appointed in the prior proceeding was a simple matter of checking the judgment roll or the appropriate minute order. (Custis, supra, at p. 496, 114 S.Ct. 1732.) The ease with which the validity of a Gideon claim could be determined strongly supported the Custis court's conclusion that the federal Constitution authorized the motion to strike procedure for denial of counsel claims, but no others.
Garcia is a good example of the same legal analysis yielding different results when applied to a different factual situation. In that case, the defendant sought to strike an alleged prior felony conviction, claiming he had received constitutionally ineffective assistance of counsel in the prior proceeding. We explained that "[s]uch a claim often will necessitate a factual investigation with regard to counsel's actions, omissions, and strategic decisions, requiring the parties and the court to reconstruct events possibly remote in time, and to scour potentially voluminous records, substantially delaying the proceedings related to the current offense. Conducting evidentiary hearings on these types of claims also would protract substantially the proceedings on the current offense." (Garcia, supra, 14 Cal.4th at p. 965, 59 Cal.Rptr.2d 858, 928 P.2d 572, italics added.) Accordingly, the difficulty in proving such a claim, and the concomitant *695 delay that would result in the current trial, convinced us that a criminal defendant should not be permitted to use the motion to strike procedure to litigate, in his current trial, ineffective assistance of counsel claims going to prior convictions. (Id. at pp. 965-966, 59 Cal.Rptr.2d 858, 928 P.2d 572)
Neither the discussion on the ease of administering the motion to strike procedure in Custis nor that in Garcia undermines our basic reasoning in Sumstine. Although a hearing on whether a defendant was given adequate Boykin-Tahl admonitions and waivers and whether the defendant was actually aware of his rights when he pleaded may, in some cases, involve a full-blown trial of contested facts, we reasoned in Sumstine that such wide-ranging inquiries should largely be avoided by the rule that Boykin-Tahl waivers be placed on the record to facilitate future review. (Sumstine, supra, 36 Cal.3d at p. 919, fn. 6, 206 Cal.Rptr. 707, 687 P.2d 904.) We reiterated that rule in Howard itself, noting "the essential wisdom of explicit waivers remains beyond question" and emphasizing "that explicit admonitions and waivers are still required in this state." (Howard supra, 1 Cal.4th at p. 1179, 5 Cal.Rptr.2d 268, 824 P.2d 1315.)
That the primary evidence of a Boykin-Tahl violation will usually appear on the face of the record distinguishes challenges on Boykin-Tahl grounds from claims of ineffective assistance of counsel, at issue in Garcia. Evidence of the latter type of claim will most often be outside the trial record, as the trial court would be required to determine such issues as the reasons for prior trial counsel's tactics or omissions, what counsel should have done to secure a more favorable result, whether such additional actions would actually have had the desired result, and whether counsel acted unreasonably or as a less than diligent advocate for his or her client. In short, litigation of such claims will, in most cases, entail a degree of delay we found unacceptable in Garcia. (See Garcia, supra, 14 Cal.4th at p. 965, 59 Cal.Rptr.2d 858, 928 P.2d 572; see also People v. Mendoza Tello (1997) 15 Cal.4th 264, 266-267, 62 Cal.Rptr.2d 437, 933 P.2d 1134 [ineffective assistance of counsel claims "more appropriately decided in a habeas corpus proceeding"].)
In Sumstine we reasoned the same would not be true for Boykin-Tahl claims, and respondent points to no evidence showing this prediction has proven unfounded. We assume this is because the determination of whether a defendant understood the constitutional rights he or she was waiving by pleading guilty is a much simpler task than determining whether prior counsel provided ineffective legal representation. After Tahl, supra, 1 Cal.3d 122, 81 Cal.Rptr. 577, 460 P.2d 449, we have followed a rule in this state requiring a pleading defendant be told on the record that he is waiving the rights to a jury, to confront the witnesses against him and the freedom from compelled self-incrimination. For post-Tahl guilty pleas, then, the record of the hearing in which the trial court accepted the defendant's plea should clearly demonstrate the defendant was told of his rights and that he affirmatively waived them. Thus, permitting defendants to raise a Boykin-Tahl claim in a motion to strike at trial would entail little disruption; a quick review of the transcript of the sentencing hearing may be all that is necessary.
For those cases in which the record fails to show the defendant was told of his rights or that he affirmatively waived them, before the trial court accepted the plea, a concern arises the plea may be constitutionally invalid. In those unusual cases, Sumstine holds that defendants need not wait to raise the claim in a separate habeas corpus proceeding, but may immediately move to strike the prior conviction.
The validity of a criminal defendant's claim he or she was denied counsel in a prior proceeding admittedly is easier to determine from the face of the trial record *696 than the validity of a Boykin-Tahl claim. Nevertheless, we understand the high court's decision in Custis, supra, 511 U.S. 485, 114 S.Ct. 1732, 128 L.Ed.2d 517, to set the floor for federal constitutional purposes, not to prohibit states from establishing rules of procedure to facilitate the smooth and efficient operation of their trial courts. Indeed, Custis itself identified instances in which Congress has, by statute, specifically permitted a defendant to challenge the constitutionality of a predicate felony in his current trial. (Custis, supra, at p. 493, 114 S.Ct. 1732, citing 18 U.S.C. former § 3575(e), "note following ch. 227" [dangerous special offender law]; 21 U.S.C. § 851(c)(2) [recidivist under Comprehensive Drug Abuse Prevention and Control Act of 1970].) This court itself has authorized the motion to strike procedure in cases not involving claims of denial of counsel. (Curl, supra, 51 Cal.3d 1292, 276 Cal.Rptr. 49, 801 P.2d 292; People v. Horton, supra, 11 Cal.4th at p. 1135, 47 Cal. Rptr.2d 516, 906 P.2d 478.) Clearly, Custis did not intend to limit to Gideon claims all collateral challenges in the trial court.

E. Sumstine Is Limited to Post-Tahl Prior Convictions
Our expectation that evidence pertinent to the concerns addressed in Boykin, supra, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274, and Tahl, supra, 1 Cal.3d 122, 81 Cal.Rptr. 577, 460 P.2d 449, will appear on the face of the record presupposes that the prior guilty plea was accepted after we decided Tahl on November 7, 1969. It is only in post-Tahl cases that trial courts were on notice that "the record must contain on its face direct evidence that the accused was aware, or made aware, of his right to confrontation, to a jury trial, and against self-incrimination, as well as the nature of the charge and the consequences of his plea." (Tahl, supra, 1 Cal.3d at p. 132, 81 Cal.Rptr. 577, 460 P.2d 449, italics added.)
For pre-Tahl guilty pleas, we cannot expect the record clearly or succinctly to demonstrate whether or not the defendant was aware of his constitutional rights before pleading. For such cases, the determination of the voluntariness of the defendant's plea, untethered to anything in the existing record, would be an onerous task requiring resort to much evidence outside the trial record. The disruption of the trial caused by having to determine the voluntariness of a pre-Tahl guilty plea would be similar to that caused by having to determine whether prior counsel was constitutionally ineffective. As in Garcia, supra, 14 Cal.4th 953, 59 Cal.Rptr.2d 858, 928 P.2d 572, we find that permitting defendants to raise challenges to pre-Tahl prior convictions will be judicially inefficient and will saddle the trial courts with an unreasonable burden. Accordingly, we conclude that motions to strike prior felony convictions on Boykin-Tahl grounds are limited to post-Tahl guilty pleas. Moreover, as we find this limitation was implicit in Sumstine, supra, 36 Cal.3d 909, 206 Cal.Rptr. 707, 687 P.2d 904, there is no problem applying this limitation to the present case.[6]
The record indicates that defendant was charged in count one of the information with having suffered a prior robbery conviction "on or about the 28th day of January, 1969 in the Superior Court of the [S]tate of California, for the [C]ounty of Los Angeles, Case Number A241447." At defendant's request, we take judicial notice of a page from the Los Angeles County Superior Court Registrar of Actions showing defendant withdrew his plea of not guilty and pleaded guilty on June 19, 1969. We filed our opinion in Tahl, supra, 1 Cal.3d 122, 81 Cal.Rptr. 577, 460 P.2d 449, on November 7, 1969. Because defendant entered his guilty plea in the prior case a few months before we decided Tahl, he *697 was not entitled to collaterally attack the voluntariness of that plea by moving to strike the conviction in the trial court. We conclude that, although the trial court erred by relying on Custis, supra, 511 U.S. 485, 114 S.Ct. 1732, 128 L.Ed.2d 517, to reject defendant's motion to strike, the court nevertheless correctly denied the motion.[7]

CONCLUSION
The judgment of the Court of Appeal is affirmed.
GEORGE, C.J., MOSK, J., and KENNARD, J., concur.
Concurring Opinion by BAXTER, J.
I concur in the judgment. I agree with the majority's holding that a noncapital criminal defendant, charged for sentencing purposes with having suffered a prior felony conviction, may not move in the sentencing court to strike the earlier conviction on the ground his or her Boykin-Tahl rights (Boykin v. Alabama (1969) 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (Boykin); In re Tahl (1969) 1 Cal.3d 122, 81 Cal.Rptr. 577, 460 P.2d 449 (Tahl)) were violated in the previous case, if the prior conviction predates our decision in Tahl. As the majority explain, when People v. Sumstine (1984) 36 Cal.3d 909, 206 Cal. Rptr. 707, 687 P.2d 904 (Sumstine) authorized such Boykin-Tahl motions, it relied on the premise that disruption of the current proceeding would be minimal, because a Boykin-Tahl violation would usually appear on the face of the plea record in the prior case. However, only after Tahl were courts on notice that "the record [of a guilty plea] must contain on its face" direct evidence of the required pre-plea admonitions and waivers. (Tahl, supra, 1 Cal.3d at p. 132, 81 Cal.Rptr. 577, 460 P.2d 449, italics in Tahl.) Thus, even if motions to strike post-Tahl priors can often be handled with reasonable dispatch, such is not the case for pleas taken prior to Tahl. In the latter category of cases, determination of the knowing and voluntary nature of the prior plea "would be an onerous task" (maj. opn., ante, 87 Cal.Rptr.2d at p. 696, 981 P.2d at p. 537) which often could not be accomplished by mere quick reference to the face of the prior record. Permitting Sumstine challenges to pre-Tahl guilty pleas would therefore "be judicially inefficient and [would] saddle the trial courts with an unreasonable burden." (Id., at p. 696, 981 P.2d at p. 537.)
Because the prior conviction at issue in this case occurred on January 28, 1969, more than nine months before we decided Tahl, it cannot be challenged by a Sumstine motion. The trial court's denial of the motion was therefore correct. We need decide nothing more to dispose of this case.
Nonetheless, the majority go out of their way to affirm that Sumstine, a decision compelled by neither the federal nor the state Constitution, otherwise still entitles a defendant to challenge a charged prior conviction on Boykin-Tahl grounds by means of a motion to strike. The majority reach this result despite intervening decisions that cast serious doubt on Sumstine's reasoning.
As the majority acknowledge, after Sumstine was decided, Custis v. United States (1994) 511 U.S. 485, 114 S.Ct. 1732, 128 L.Ed.2d 517 (Custis) held that in federal recidivism proceedings, a prior conviction can be challenged only on grounds the defendant neither received nor waived representation by counsel. (See Gideon v. Wainwright (1963) 372 U.S. 335, 83 S.Ct. *698 792, 9 L.Ed.2d 799; see also Burgett v. Texas (1967) 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319.) Among other things, Custis specifically declined to allow such challenges on grounds that a prior guilty plea was taken without a proper advisement and waiver of rights. In direct contradiction to the analysis of Sumstine, Custis concluded that both administrative considerations, and the strong policy favoring finality of criminal judgments, counseled against such a course. (Custis, supra, 511 U.S. at pp. 496-497, 114 S.Ct. 1732.)
Less than three years ago, we found Custis persuasive enough to conclude that in noncapital cases at least, a Sumstine motion may not be used to challenge a prior conviction on grounds of ineffective assistance of counsel. (Garcia v. Superior Court (1997) 14 Cal.4th 953, 59 Cal.Rptr.2d 858, 928 P.2d 572 (Garcia).) In particular, we stressed the disruption of orderly proceedings that would occur if recidivist defendants were allowed to encumber their trials for later offenses by demanding lengthy examination of the circumstances under which prior charged convictions were obtained. (Id., at pp. 964-966, 59 Cal.Rptr.2d 858, 928 P.2d 572.)
Were we writing on a clean slate, I would follow Custis here as well, and would therefore decline to recognize, in noncapital cases, a motion to strike a prior conviction on any ground other than the complete denial of counsel. I discuss below some of the administrative difficulties of allowing such a motion, even as limited to Boykin-Tahl issues. But even aside from the administrative problems, I sympathize with Custis's independent concern for the finality of judgments.
As Custis explained, "`[i]nroads on the concept of finality tend to undermine confidence in the integrity of our procedures' and inevitably delay and impair the orderly administration of justice. [Citation.] [The] principles of finality associated with habeas corpus actions apply with at least equal force when a defendant seeks to attack a previous conviction used for sentencing. By challenging the previous conviction, the defendant is asking a [trial] court `to deprive [the] [prior] judgment of [its] normal force and effect in a proceeding that ha[s] an independent purpose other than to overturn the prior judgmen[t].' [Citation.] These principles bear extra weight in cases in which the prior convictions... are based on guilty pleas, because when a guilty plea is at issue, `the concern with finality served by the limitation on collateral attack has special force.' [Citation.]" (Custis, supra, 511 U.S. 485, 497, 114 S.Ct. 1732, 128 L.Ed.2d 517, italics added.)
One might nonetheless conclude that Custis does not justify entirely overruling our preexisting precedent in Sumstine. However, since the majority take this opportunity to reaffirm the availability of a Sumstine motion for Boykin-Tahl claims, Custis should at least inspire the majority to limit the motion carefully, so that administrative disruptions and intrusions on the finality of judgments are minimized. The majority have wisely adopted one such limitation by making clear that a Sumstine motion cannot be employed to attack California prior convictions that predate Tahl. Other clarifications of the reach of Sumstine, not explicitly endorsed by the majority, come readily to mind.
First, just as a California conviction that predates Tahl cannot be the subject of a Sumstine motion on Boykin-Tahl grounds, out-of-state convictions should similarly be excluded, at least absent a clear showing they arose under guilty plea requirements identical to those imposed in this state by Tahl. To be sure, it has long been plain error under Boykin for any American court to take a plea of guilt without an "affirmative showing" on the record that the plea was voluntary, with a full understanding of the fundamental constitutional trial rights thereby forfeited. (Boykin, supra, 395 U.S. 238, 242, 89 S.Ct. 1709, 23 L.Ed.2d 274.) But Boykin did not explicitly require that full advisement of the defendant, and the defendant's subsequent *699 waivers, must themselves occur on the record. In California, Tahl imposed these stricter prophylactic requirements in order to assure adherence to Boykin and to foreclose any possible dispute about the validity of a particular plea. (Tahl, supra, 1 Cal.3d 122, 132, 81 Cal.Rptr. 577, 460 P.2d 449.) It is Tahl's procedural exactitude, in particular, on which Sumstine and the instant majority have heavily relied to conclude that motions to strike prior convictions on Boykin-Tahl grounds do not impose excessive burdens on sentencing courts.
I do not know the extent to which other jurisdictions have interpreted Boykin to require the facial admonitions and waivers prescribed for California courts by Tahl. However, in People v. Howard (1992) 1 Cal.4th 1132, 5 Cal.Rptr.2d 268, 824 P.2d 1315, we noted the overwhelming weight of federal authority is to the effect that Boykin does not require explicit on-the-record admonitions and waivers, and allows a guilty plea to be upheld, even on direct appeal, if the record as a whole affirmatively shows the plea was knowing and voluntary. (Howard, supra, at pp. 1177-1179, 5 Cal.Rptr.2d 268, 824 P.2d 1315, citing, inter alia, Brady v. United States (1970) 397 U.S. 742, 747-748, fn. 4, 90 S.Ct. 1463, 25 L.Ed.2d 747; United States v. Pricepaul (9th Cir.1976) 540 F.2d 417, 424-125.)
The majority acknowledge that the Sumstine rule, as applied to Boykin-Tahl issues, is tolerable only insofar as we can expect the record of the challenged prior guilty plea readily to show, on its face, that the defendant knew and waived his rights. For this reason, only priors governed by Tahl's requirement of express admonitions and waivers may be the subject of a Sumstine motion. Just as this principle eliminates Boykin-Tahl challenges to California priors that predate Tahl, so must Boykin-Tahl challenges to non-California priors be excluded, except where it appears beyond doubt that the guilty pleas underlying such convictions were subject, under the law of the convicting jurisdictions, to Tahl-like procedural formalities.
Second, we should emphasize a point that seems obvious, but has not been made crystal clear by Sumstine or by the instant majority opinion. In a noncapital case at least, if the available record of the prior conviction directly reflects the explicit admonitions and waivers required by Tahl, or if the evidence otherwise shows such explicit admonitions and waivers occurred in open court, a Sumstine challenge should be summarily denied, without any need for further proceedings.
This principle should bar "behind the record" challenges to a facially valid waiver proceeding, such as claims that the defendant was not mentally competent at the time he received and waived his rights. When a defendant received the explicit admonitions contemplated by Tahl, then stated, under the direct observation of court and counsel, that he understood the consequences of his plea and voluntarily waived his rights, his belated protestations to the contrary should not be allowed to affect the orderly disposition of a subsequent criminal proceeding. To allow such disputes in the face of the prior record would create exactly the kind of unwarranted midtrial disruptions that influenced the holdings of both Custis and Garcia.[1]
Finally, the administrative concerns expressed in Custis and Garcia should cause us to examine more closely the implications of an incomplete record, even in the case of a plea governed by the explicit procedural requirements of Tahl.[2] Both *700 Sumstine and the instant majority opinion rely heavily on the assumption that a complete record of the prior conviction will be readily available, so that it can easily be ascertained whether Tahl's procedures were followed. However, our own decisions belie this assumption.
Thus, in Sumstine itself, we noted that even though the prior guilty plea there at issue occurred in 1974, long after Boykin and Tahl, the documentary record was "woefully inadequate" to determine whether the requirements of that case had been met. (Sumstine, supra, 36 Cal.3d 909, 921, 924, 206 Cal.Rptr. 707, 687 P.2d 904.) We observed that a sufficient record might have existed at one time, but reporter's notes of the 1974 arraignment had apparently been eliminated under a statute that permitted county clerks to destroy such notes after a specified period. (Id., at p. 921, 206 Cal.Rptr. 707, 687 P.2d 904.)
Sumstine gave the following explanation of how a motion to strike should proceed in such circumstances: The defendant cannot rely on the silence of the prior record, but must "allege" the actual denial of his constitutional rights. Moreover, once the prosecution proves the existence of the prior conviction, the burden shifts to the defendant to "produc[e] evidence" that his rights were infringed. If the defendant does so, the prosecution may introduce rebuttal evidence, but at this stage, "it will not be sufficient rebuttal for the state to simply invoke the regularity of the silent record." (Sumstine, supra, 36 Cal.3d 909, 923, 206 Cal.Rptr. 707, 687 P.2d 904; see also People v. Coffey (1967) 67 Cal.2d 204, 217, 60 Cal.Rptr. 457, 430 P.2d 15.)
In Curl v. Superior Court (1990) 51 Cal.3d 1292, 276 Cal.Rptr. 49, 801 P.2d 292 (Curl), we held that a capital defendant could move to strike, on grounds his guilty plea was involuntary, a prior murder conviction alleged as a special circumstance. However, stressing that a judgment under collateral attack is presumed regular (Evid.Code, §§ 664, 666), and that the party with the burden of proof of a fact has the initial duty to produce evidence of that fact (id., § 550, subd. (b)), Curl concluded that the defendant attacking a prior conviction has the burden to prove its constitutional invalidity by a preponderance of evidence. (Curl, supra, 51 Cal.3d at pp. 1303-1306, 276 Cal.Rptr. 49, 801 P.2d 292.)
In Curl itself, "[n]o transcript of the ... [guilty plea] proceedings [in the 1977 prior murder case] was available." (Curl, supra, 51 Cal.3d 1292, 1296, 276 Cal.Rptr. 49, 801 P.2d 292.) The 1977 minute order merely stated that court and counsel had "voir dire[d]" defendant on the charge, and that the court "`[found] the pleas to be free and voluntary ... with an intelligent waiver of rights and with understanding of the nature of the charges and possible consequences....'" (Ibid.)
Despite these available (if incomplete) indications that the defendant had received and waived his rights, a Sumstine evidentiary hearing was held. The defendant testified he was on drugs at the time of the 1977 plea, misunderstood its penal consequences, was not told the rights he was waiving, and would not have pled guilty if fully advised. (Curl supra, 51 Cal.3d 1292, 1297-1298, 276 Cal.Rptr. 49, 801 P.2d 292.) The judge and defense counsel in the 1977 case gave rebuttal testimony suggesting it was their "custom and habit" to assure fully informed waivers by a defendant who seemed competent. (Ibid.) The 1977 prosecutor testified he specifically remembered Boykin-Tahl admonitions and waivers, had seen no outward signs of intoxication, and kept file notes suggesting the defendant was questioned about recent drug ingestion. (Curl, supra, at p. 1297, 276 Cal.Rptr. 49, 801 P.2d 292.) On this state of the record, Curl implied, the trial *701 court, which had found "clear and convincing" evidence to rebut any inference of the prior's invalidity (id., at p. 1298, 276 Cal. Rptr. 49, 801 P.2d 292), would necessarily and properly have found the defendant failed to prove his claim by a preponderance.
In People v. Pride (1992) 3 Cal.4th 195, 10 Cal.Rptr.2d 636, 833 P.2d 643 (Pride), the defendant sought, on Boykin-Tahl grounds, to prevent use of his 1972 rape conviction as aggravating evidence at the penalty phase of his trial for capital murder. No reporter's transcript of the 1972 guilty plea existed. The minute order recording the plea said the defendant had "waived trial/jury," but the order did not refer to any other Boykin-Tahl advisements or waivers. An evidentiary hearing was held. There, it developed that Judge Calcagno, who took the 1972 plea, had since died. Both the prosecutor and the principal public defender in the 1972 case took the stand. Neither remembered the individual circumstances of the plea, though both testified it was Judge Calcagno's invariable practice to provide full advisements, and to extract full waivers, before accepting guilty pleas. (Id., at pp. 255-256, 10 Cal.Rptr.2d 636, 833 P.2d 643.) The defendant testified he "did not remember" anybody advising him of his constitutional rights before he pled guilty. (Id., at p. 255, 10 Cal.Rptr.2d 636, 833 P.2d 643.) On this record, we concluded, as in Curl, that the evidence of judicial "habit and custom" supported the trial court's determination that the challenged plea was taken in accordance with Boykin and Tahl. (Pride, supra, at p. 256, 10 Cal.Rptr.2d 636, 833 P.2d 643.)
These complicated scenarios suggest that for multiple, often legitimate, reasons, complete records of long-past guilty pleas, even those taken after Boykin and Tahl, may not be available. The question arises whether, in such circumstances, a noncapital defendant can obtain a full evidentiary hearing, with its attendant disruption of the current trial, merely by "alleg[ing]" (see Sumstine, supra, 36 Cal.3d 909, 923, 206 Cal.Rptr. 707, 687 P.2d 904) that his prior plea violated Boykin-Tahl procedures, and that he actually did not know and waive his rights.
In addressing that issue, three principles seem paramount. The first, as was emphasized in both Sumstine and Curl, involves the related presumptions, for purposes of collateral attack, that final judgments are valid, that official duty was performed, and that proceedings were regular. Application of these rules means we must assume, until the contrary appears, that court proceedings were conducted in compliance with applicable rules, including those set forth in Tahl. Thus, as Sumstine implied, the defendant mounting a collateral attack on his prior conviction cannot merely invoke the "silence" of the record in the prior case. (36 Cal.3d at p. 924, 206 Cal.Rptr. 707, 687 P.2d 904.) Instead, as Curl made clear, he has the burden of proving an affirmative violation of his constitutional rights.
The second principle is that the People should suffer no undue penalty for the inadequacy or unavailability of an earlier record. It is the defendant's obligation to ensure a record adequate to evaluate his collateral attack on a presumptively valid final judgment. If the defendant never sought to marshal the record in the prior matter, and never timely challenged the prior judgment, the government may well have been within its rights to cull and destroy its obsolete files. The state has no duty to generate "appeal-worthy" records in every case, or to maintain criminal case files indefinitely, on the chance they will one day be relevant on collateral attack in another matter.
The final principle, derived from the reasoning of both Custis and Garcia, is that a noncapital defendant's opportunity, in a later case, to prove the invalidity of a prior conviction must be balanced against the inherent disruption such a procedure imposes upon the orderly administration of *702 justice. This principle counsels against allowing a noncapital defendant to obtain a full evidentiary hearing, such as those conducted in Pride and Curl, on the basis of a wholly uncorroborated allegation that a prior plea, taken in California after Boykin and Tahl, was actually uninformed or involuntary.
Accordingly, I submit, if a noncapital Sumstine defendant cannot supply a record of the prior plea sufficient to determine whether Boykin-Tahl procedures were followed, he or she must do more than allege an infringement of Boykin-Tahl rights in order to obtain a full evidentiary hearing on that issue. Instead, to avoid immediate denial of such a motion, the defendant should be required to make a prima facie showing (by appropriate declarations, documents, or formal offers of proof) that Boykin-Tahl procedures were violated, and that there was, in fact, no knowing and voluntary waivers of rights.
In making this preliminary showing, the defendant should not be permitted to rely solely on the absent or incomplete prior record and his or her own insistence the prior plea was constitutionally defective. In this context, "a defendant's self-serving statement [should be] insufficient ... and [should] be corroborated by independent evidence. A contrary [rule] would lead to an unchecked flow of easily fabricated claims." (In re Alvernaz (1992) 2 Cal.4th 924, 938, 8 Cal.Rptr.2d 713, 830 P.2d 747 [imposing similar requirements on a defendant who seeks to show his rejection of a plea offer was the result of ineffective assistance].)[3]
These limitations all seem necessary to keep the Sumstine procedure within rational bounds, and to prevent defendants, now additionally motivated by three strikes consequences, from delaying current criminal trials with specious but time-consuming attacks on prior guilty pleas. Assuming a narrow version of the Sumstine rule should be retained, I would explicitly circumscribe Sumstine's availability and procedures accordingly.
CHIN, J., and BROWN, J., concur.
NOTES
[1] This court later granted review in Garcia v. Superior Court, necessarily superseding the appellate opinion. (Cal. Rules of Court, rule 976(d).) Our opinion is published at Garcia v. Superior Court (1997) 14 Cal.4th 953, 59 Cal.Rptr.2d 858, 928 P.2d 572 (Garcia).
[2] Upon reaching this conclusion, we overruled People v. Coleman, supra, 71 Cal.2d 1159, 80 Cal.Rptr. 920, 459 P.2d 248, to the extent it held the motion to strike procedure was available in noncapital cases to challenge the validity of prior convictions on ineffective assistance of counsel grounds. (Garcia, supra, 14 Cal.4th at pp. 960-961, fn. 4, 966, fn. 6, 59 Cal.Rptr.2d 858, 928 P.2d 572.) We also disapproved two Court of Appeal opinions that had reached the same conclusion as Coleman. (Garcia, supra, at p. 966, fn. 6, 59 Cal.Rptr.2d 858, 928 P.2d 572.)
[3] Even if the defendant can prove he did not waive his constitutional rights before pleading guilty, he must also plead and prove he was actually unaware of his rights, and that he would not have pleaded guilty had he known his rights. (People v. Tassell (1984) 36 Cal.3d 77, 92, 201 Cal.Rptr. 567, 679 P.2d 1, overruled on another ground in People v. Ewoldt (1994) 7 Cal.4th 380, 386-387, 27 Cal.Rptr.2d 646, 867 P.2d 757; In re Ronald E. (1977) 19 Cal.3d 315, 325, fn. 8, 137 Cal.Rptr. 781, 562 P.2d 684; People v. Cooper (1992) 7 Cal. App.4th 593, 596-601, 8 Cal.Rptr.2d 912.)
[4] Although we have not directly held the Howard totality-of-the-circumstances test would apply on direct appeal from a guilty plea to a substantive offense, our subsequent cases seem to have assumed it. (See People v. Ernst (1994) 8 Cal.4th 441, 446, 34 Cal.Rptr.2d 238, 881 P.2d 298; People v. Adams (1993) 6 Cal.4th 570, 576, fn. 5, 24 Cal.Rptr.2d 831, 862 P.2d 831; People v. Wash (1993) 6 Cal.4th 215, 268-269, 24 Cal.Rptr.2d 421, 861 P.2d 1107 [capital case].)
[5] Although Howard, supra, 1 Cal.4th 1132, 5 Cal.Rptr.2d 268, 824 P.2d 1315, made a significant change in the law with regard to direct challenges to the validity of admission of prior felony conviction enhancement allegations, a collateral attack via a motion to strike has always required a showing of prejudice. (People v. Hayes (1990) 52 Cal.3d 577, 637, 276 Cal.Rptr. 874, 802 P.2d 376; People v. Harty (1985) 173 Cal.App.3d 493, 502-503, 219 Cal.Rptr. 85.)
[6] This determination makes it unnecessary to address the issue, raised by defendant, that overruling Sumstine and applying that rule to him would violate his constitutional rights under the ex post facto and due process clauses of the federal Constitution.
[7] We need not decide at this time whether the Sumstine motion to strike procedure is available to challenge prior convictions in which the accused pleaded guilty in a jurisdiction other than California. There being no out-of-state prior felony conviction in this case, we leave that question for another day. For the same reason, we express no opinion on the various other ways in which the author of the concurring opinion would limit the reach of Sumstine.
[1] Thus, proof that the defendant in fact did not understand and voluntarily waive his rights in the prior case, though necessary to his or her final success on a Sumstine motion, should be irrelevant unless and until the defendant first establishes that the proceedings leading to his plea did not comply with Tahl.
[2] By my use of the word "incomplete" in this context, I do not mean a full record that demonstrates the inadequacy or incompleteness of the Boykin-Tahl proceedings conducted in the prior case. Instead, as will become clear, I refer to a record, some or all or which was never prepared or has since been lost or destroyed, such that it does not disclose whether adequate admonitions and waivers occurred in open court.
[3] My comments throughout this opinion relate only to noncapital Sumstine motions that challenge prior convictions on Boykin-Tahl grounds. Because a Sumstine motion that alleges the complete denial of counsel in a prior case is constitutionally based (see Custis, supra, 511 U.S. 485, 495, 114 S.Ct. 1732, 128 L.Ed.2d 517), we may have less latitude to dictate the procedures governing such a motion. I therefore express no views on that subject. Furthermore, by my various references to "noncapital" defendants, I do not mean to imply that I necessarily accept any broader rules or grounds for a Sumstine motion in capital cases, other than as specifically provided in People v. Horton (1995) 11 Cal.4th 1068, 1126-1141, 47 Cal.Rptr.2d 516, 906 P.2d 478.