Filed 11/10/15  P. v. Parson CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>TERRANCE LAMONT PARSON,<br><br>    Defendant and Appellant. | D068476<br><br><br>(Super. Ct. No. FVA1101104) |

APPEAL from a judgment of the Superior Court of San Bernardino County, Steven A. Mapes, Judge.  Affirmed in part; reversed in part and remanded with directions.

Marcia R. Clark, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Brendon W. Marshall, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Terrance Lamont Parson of assault with a deadly weapon. (Pen. Code, § 245, subd. (a)(1).)[1] The jury also found that Parson had two prior strike convictions and had served one prior prison term. The trial court sentenced Parson under the "Three Strikes" law to 25 years to life in state prison. (§§ 667, 1170.12, 1170.126.)

Parson contends that the trial court erred in denying his motions for mistrial and his motion for new trial on grounds of prosecutorial misconduct. He argues that the prosecutor committed multiple acts of misconduct that violated his right to a fair trial under the Sixth and Fourteenth Amendments to the United States Constitution. He also claims that the evidence was insufficient to support a finding that that he was properly advised of, and knowingly waived, his trial rights under *Boykin v. Alabama* (1969) 395 U.S. 238 (*Boykin*) and *In re Tahl* (1969) 1 Cal.3d 122 (*Tahl*) when he pled guilty to attempted murder and robbery in 1992 and, therefore, the trial court erred in using his 1992 convictions to increase his sentence under the Three Strikes law. In addition, Parson asserts that the trial court abused its discretion in denying his motion under *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*) to strike one or more of his prior strike convictions. Finally, Parson claims that the trial court erred by denying section 4019 conduct credits and by imposing a court security fee[2] under section 1465.8 in the amount of $60.

---

[1] Unless specified, further statutory references are to the Penal Code.

[2] As we shall explain, shortly before the trial in this case, the Legislature amended section 1465.8, changing the word "fee" to "assessment." (Stats. 2011, ch. 40, § 6, eff. June 30, 2011.) We use the phrase "court security fee" when reciting the trial record and

2

The People argue that the prosecutor did not commit misconduct and that the trial court did not abuse its discretion in denying Parson's motions under *Boykin-Tahl* and *Romero*. The People agree that the trial court erred in denying section 4019 conduct credits to Parson. The People state that the amount of the section 1465.8 assessment should have been $30, and contend for the first time on appeal that the trial court erred in failing to impose the $30 assessment required by Government Code section 70373.

We agree with the parties with respect to the denial of section 4019 conduct credits and reverse the trial court's ruling on that issue. We conclude that the minute order and the abstract of judgment show that the court imposed the assessments required by section 1465.8 and by Government Code section 70373 in the amount of $60. However, the section 1465.8 assessment should have been in the amount of $40, for a total assessment of $70. We order the trial court to correct the abstract of judgment with respect to the conduct credit and assessments but otherwise find no error and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

On July 17, 2011, Parson, who was in his house, and his wife, Tracey Jones-Parson, who was standing outside on the sidewalk, had a lengthy verbal altercation. Neighbors telephoned the police. Police officers left after Parson and his wife stopped arguing. Jones-Parson also left but returned a short time later with her 19-year-old son, Karl Palmer. Palmer began to scream and swear at Parson, challenging him to "come out

---

defendant's argument, but otherwise refer to the "court security fee" as the section 1465.8 assessment.

3

of the house." Parson repeatedly said, "You don't want that, if, if I come down there there's gonna be problems, you don't want me to come down."

Palmer and Parson continued to swear at each other until Parson came out of his house carrying a kitchen knife with a four-inch wooden handle and four-inch blade. Parson shouted "you asked for it" and said that he was going to kill Palmer. Palmer ran into a neighbor's house and shut the door. Neighbors contacted the police.

When police officers Shannon Vanderkallen and David Campa arrived, Parson dropped the knife and walked toward them. He refused to comply with their commands to get on the ground. The officers wrestled Parson to the ground and arrested him for assault with a deadly weapon.

At trial, a neighbor, Brandy Jackson Villarreal, testified that Parson was holding the knife at his side when he approached Palmer. Villarreal said that she stood between Parson and Palmer, and pushed Palmer toward her house. Villarreal's cousin, Aubrey Beck, testified that Parson was holding the knife at his side when he approached Palmer and came within 20 feet of him. Nancy Marquez, another neighbor, testified that she was watching the incident from an upstairs window. She telephoned 911 when Palmer came out of his house with a knife, telling the dispatcher that Palmer was "waving the knife around right now" and "threatening a teenage kid." Marquez said that Parson came within 10 feet of Palmer.

Officer Vanderkallen testified that he interviewed the eyewitnesses at the scene. Beck told him that Parson had been chasing Palmer with a knife, saying that he was going to kill Palmer. Parson was swinging the knife at Palmer and was able to get within

4

three to five feet of him. Villarreal told Vanderkallen that Parson had come very close to Palmer and appeared to be trying to stab him.

Three days into deliberations, the jury announced that it was deadlocked. The trial court gave a clarifying instruction on the elements of assault. After further deliberations, the jury returned a guilty verdict. In a bifurcated trial, the jury found that Parson had been convicted of robbery and attempted murder in 1992 and that he had been convicted of felony child cruelty in 2005.

In posttrial proceedings, the trial court denied Parson's motion to strike his 1992 convictions for robbery and attempted murder, to which he had entered a guilty plea, on the ground that that he had not been properly advised, and did not waive, his constitutional rights under *Boykin-Tahl* at that time. The trial court also denied Parson's motion to strike one of his prior strike convictions under *Romero*.

At sentencing, the trial court imposed a sentence of 25 years to life. The court denied section 4019 conduct credits to Parson and imposed fines and fees, including a $60 fee that the trial court called a "court security fee," but was termed a "criminal assessment and court operations assessment" in the minute order and abstract of judgment.

DISCUSSION

I

PROSECUTORIAL MISCONDUCT CLAIMS

A

*The Parties' Arguments*

Parson contends that the trial court erred in denying his motions for mistrial and motion for new trial on ground of prosecutorial misconduct. He claims that the prosecutor committed misconduct by: deliberately eliciting testimony in violation of the trial court's evidentiary ruling; making a speaking objection in the presence of the jury implying that the victim, who did not testify, had given a statement that the jury had not heard that was prejudicial to the defendant; and improperly referring to the protection of the community and the absent victim in rebuttal argument. Parson asserts that the repeated instances of misconduct were prejudicial and violated his constitutional right to a fair trial.

The People respond that the trial court acted within its discretion in denying the motions for mistrial and motion for new trial. The People argue that the prosecutor appropriately instructed witnesses about the trial court's evidentiary rulings, the speaking objection did not provide the jury with any information that they did not already know, and the rebuttal argument did not improperly appeal to the sympathy or passions of the jury. In addition, the People argue that any error was harmless because the trial court instructed the jury that statements by the attorneys were not evidence and should not be

6

considered; not to consider responses that the court had stricken from the record; and not to let sympathy or passion inform its decision.

B

*Additional Factual Background*

1.      Testimony in violation of a court order

Parson filed a pretrial motion to exclude evidence concerning the circumstances of his arrest. He argued that the police were not percipient witnesses to the alleged assault and that any testimony about his behavior after the police arrived was more prejudicial than probative. (Evid. Code, § 352.) He specifically sought to exclude statements in Vanderkallen's report that Parson had been "very amped up and refused to comply with [Vanderkallen's] commands" and "refused to sit down and clenched his fist while puffing his chest out and [starting] to stiffen up." Vanderkallen also reported that Parson was muscular and appeared to be very irate, and that he determined that it was necessary to use physical force to arrest Parson because he believed that Parson was going to attack and assault Officer Campa.

The prosecutor opposed the motion in limine. She argued that the evidence of Parson's conduct after police arrived on the scene was relevant to show the defendant's state of mind, and that Parson's assault on Palmer and Parson's actions toward the police constituted one continuous act of aggression.

The trial court issued a tentative ruling allowing testimony about Parson's rude and angry demeanor but excluding testimony of his aggressive behavior toward the officer and his lack of cooperation with the police.

7

On direct examination, the prosecutor asked Vanderkallen, "Can you describe how [Parson] appeared?"

Vanderkallen: "He was irate. Kind of breathing heavily, appeared to be intoxicated."

Prosecutor: "Okay. And when you are -- when you asked him -- when you told him to sit down and he did not sit down, did he appear otherwise cooperative, or how did he appear?"

Vanderkallen: "He was not cooperative at all."

Prosecutor: "Okay. How did his body look? What did his body look like? Was there anything specific about what his body was doing that caused you to say that he was not cooperative?"

Defense counsel: "Objection, your Honor, 402."

The trial court sustained the objection, explaining to counsel that the court had ruled that testimony about Parson's rude, angry and intoxicated mannerisms could be admitted in evidence, but that any testimony about Parson's aggressive behavior with the police officers was inadmissible. The prosecutor said that she had instructed both police officers not to testify that they felt personally threatened by, or had physical contact with, Parson. The trial court said that it would allow the prosecutor to elicit that Parson was "amped up" but would not allow her to elicit testimony concerning any type of physical contact with the police.

When trial resumed, the prosecutor asked Vanderkallen to describe Parson's physical appearance. Vanderkallen replied, "He had his shirt off. He was very amped

8

up, irate. We were giving him commands after we identified ourselves to sit down and get on the ground."

The prosecutor then asked, "When you use the word 'amped up,' what does that mean?"

Vanderkallen: "Clenching his fist, his chest puffed out, kind of ready to fight."

The trial court sustained defense counsel's objection and struck the statement from the record. During later discussions about Vanderkallen's testimony, the trial court said, "I don't think . . . the officer understood the [c]ourt's order."

On direct examination, Officer Campa testified that Parson smelled of alcohol and that he appeared to be intoxicated and extremely upset. The prosecutor asked, "[W]as there anything about his body and the way that he presented himself to you that suggested to you that maybe he was angry?"

Campa: "Yes, ma'm."

Prosecutor: "What was that?"

Campa: "During our investigation, that's as we're dealing with Mr. Parson, I noticed . . . he clenched his fist and started puffing his chest and became stiff."

Defense counsel objected. The trial court ordered the response stricken from the record. Defense counsel moved for a mistrial, stating that the jury now had heard improper evidence about Parson's conduct twice. The trial court proposed giving the jury a limiting instruction but defense counsel objected, saying that an instruction would only call attention to the damaging statement.

9

The trial court commented that Campa's response had clearly violated its order. The trial court stated that it had drawn a bright line between the officers' assessment of Parson's demeanor on their arrival at the scene and any physical contact they subsequently had with him. However, the trial court added that it did not believe that the prosecutor had intentionally crossed that line. In response to defense counsel's argument, the trial court acknowledged that the officer had violated an explicit order, but explained that the court was denying the motion for mistrial for lack of prejudice to the defendant. The court found that even if the jury were to find that Parson clenched his fists and puffed up his chest when he encountered the police, the violation of the ruling, in and of itself, was not prejudicial to the defendant.

2. Speaking objection about victim's statement

During defense counsel's cross-examination of Vanderkallen, counsel verified that Palmer was 19 years old and then asked, "You know he's six foot one, correct?"

At this point, the prosecutor said, "Object. Foundation and also hearsay unless the People are allowed to inquire as to the entire statement of Mr. Palmer."[3]

Defense counsel objected. Outside the presence of the jury, the trial court told the prosecutor, "[There is] an unspoken rule against speaking objections. . . . [¶] [T]he speaking objection in this case is one that, basically, now tells the jury that a statement

_____

[3] The victim, Karl Palmer, did not testify at trial. In posttrial proceedings, Palmer testified that he had been attending college in another state and had not been aware of any efforts to locate him. The prosecution introduced records of telephone conversations between Parson and his wife in which they had discussed maintaining Palmer's absence. Parson apparently assumed that he would not be bound over for trial in Palmer's absence.

10

was made by the witness who apparently, I'm guessing, is not going to be here. So there may be some *Crawford*[4] issues with it. And . . . what you have, basically, done by the speaking objection is [tell] the jury there's a lot there and I want to get into it, but you guys don't know about it. I don't think that was your intent. But that's the effect speaking objections have."

Defense counsel moved for a mistrial. The trial court denied the motion, stating that although the court was "not happy" with the prosecutor, the speaking objection was not prejudicial to the defendant in view of the totality of the evidence. The trial court instructed the jury that objections made by the attorneys were not evidence and not to consider the attorney's statements during deliberations.

3.      Improper statements during rebuttal argument

During closing argument, the prosecutor asked the jury to find the defendant guilty of assault with a deadly weapon. She said, "We ask that you hold him accountable; that you protect the victim that wasn't here to talk to you -- "

Defense counsel objected. The trial court sustained the objection and ordered the remark stricken. The prosecutor continued, " -- that you do the right thing; that you look after the safety of your community; that you uphold -- "

Defense counsel objected again and asked the remark to be stricken.

Prosecutor:  "-- the law."

---

4       *Crawford v. Washington* (2004) 541 U.S. 36 [barring admission of out-of-court testimonial statements unless witness is unavailable and defendant had prior opportunity to cross-examine that witness].)

The Court: "Sustained."

Prosecutor: "-- that you uphold the law; that you convict the defendant. Thank you."

After the jury retired to deliberate, the court addressed the prosecutor, stating, "[W]hen you tell the jury to 'protect the community,' that's improper argument. I mean, you have to know for future reference, that's not something you can argue. . . . [Y]ou're asking the jury to do more than what their job is. Their job is to decide what the facts are."

Defense counsel moved for a mistrial. The trial court denied the motion, stating that if the defendant was convicted, counsel could bring a motion for a new trial, and the court would review the transcripts to make sure its ruling was correct. The trial court said that it had been concerned about several issues during the trial and each time took immediate steps to correct any possible confusion on the jury's part. The trial court was satisfied that those steps were sufficient to ensure that the defendant received a fair trial.

After the jury returned its verdict, Parson filed a motion for a new trial, claiming prosecutorial misconduct for eliciting improper evidence, making a speaking objection, and making improper statements during argument. The trial court commented that in some instances, the prosecutor's conduct had been "shock[ing]." With the exception of Vanderkallen's improper response to her question, which the court believed the prosecutor had not expected, the prosecutor had been "remiss." However, the court stated that the appropriate analysis was whether the cumulative effect of the prosecutor's conduct was prejudicial to the defendant. The trial court had sustained defense counsel's

12

objections and struck the answers and statements from the record.  The trial court found beyond a reasonable doubt that the errors complained of had not contributed to the jury's verdict, and denied the motion for new trial.

C

*Applicable Legal Principles and Standard of Review*

" 'A prosecutor is held to a standard higher than that imposed on other attorneys because of the unique function he or she performs in representing the interests, and in exercising the sovereign power, of the state.  (*People v. Kelley* (1977) 75 Cal.App.3d 672, 690.)  As the United States Supreme Court has explained, the prosecutor represents "a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done."  (*Berger v. United States* (1935) 295 U.S. 78, 88.)' "  (*People v. Hill* (1998) 17 Cal.4th 800, 820 (*Hill*).)

A prosecutor acts improperly in " 'eliciting or attempting to elicit inadmissible evidence' in defiance of a court order."  (*People v. Wallace* (2008) 44 Cal.4th 1032, 1071 (*Wallace*), quoting *People v. Crew* (2003) 31 Cal.4th 822, 839.)  In addition, it is improper for the prosecutor to use speaking objections to place information before the jury that was not admitted in evidence (*People v. Pitts* (1990) 223 Cal.App.3d 606, 722) or to appeal to the sympathies or passions of the jury at the guilt phase of a criminal trial, at which the jury is to make an objective determination of guilt (*People v. Mendoza* (1974) 37 Cal.App.3d 717, 727; *People v. Sanchez* (2014) 228 Cal.App.4th 1517, 1536).  If the prosecutor uses deceptive or reprehensible methods to attempt to persuade either

13

the trial court or the jury, such conduct may be characterized as "prosecutorial misconduct." (*People v. Morales* (2001) 25 Cal.4th 34, 44 (*Morales*); *People v. Ayala* (2000) 23 Cal.4th 225, 284.)  If the prosecutor does not act with a culpable state of mind, " '[a] more apt description of the transgression is prosecutorial error.' " (*People v. Centeno* (2014) 60 Cal.4th 659, 667, 666.)  The unintentional injury to a defendant is " ' "nonetheless an injury because it was committed inadvertently rather than intentionally." ' " (*Hill, supra*, 17 Cal.4th at p. 823.)

"A prosecutor's conduct violates the Fourteenth Amendment to the federal Constitution when it infects the trial with such unfairness as to make the conviction a denial of due process." (*Morales, supra,* 25 Cal.4th at p. 44.)  In such a case, reversal of the judgment is required unless the error is harmless beyond a reasonable doubt. (*Chapman v. California* (1967) 386 U.S. 18, 24.)  If the prosecutor has committed error that does not render a trial fundamentally unfair under federal constitutional standards, a defendant's conviction will not be reversed under state law unless it is reasonably probable that a result more favorable to the defendant would have been reached in the absence of that error.  (*Wallace, supra,* 44 Cal.4th at p. 1071; *People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*); see *People v. Castillo* (2008) 168 Cal.App.4th 364, 386, fn. 9.)

D

*Analysis*

The parties devote much of their arguments to the egregiousness, or lack thereof, of the prosecutor's conduct.  Their ultimate focus, however, is on whether Parson was prejudiced as a result of those errors.  Parson makes a cursory argument that his federal

14

constitutional right to a fair trial was violated and that the errors were not harmless beyond a reasonable doubt. The People, equally briefly, assert that Parson received a fair trial under federal constitutional standards. The parties more carefully develop their respective arguments concerning whether it is or is not reasonably probable that a result more favorable to the defendant would have been reached in the absence of any misconduct by the prosecutor. Our review of the record does not show that the prosecutor's errors were so egregious that they deprived Parson of a fundamentally fair trial under federal constitutional standards. (*Hill*, *supra*, 17 Cal.4th at p. 819.) We will therefore focus our attention on whether Parson has demonstrated that he was prejudiced under state law standards as a result of the prosecutor's conduct. (*Wallace*, *supra*, 44 Cal.4th at p. 1071; *Watson, supra,* 46 Cal.2d at p. 836.)

Before turning to that issue, we accept the trial court's determination that the prosecutor did not commit misconduct when she asked Vanderkallen to explain what he meant when he said that Parson was "amped up," and Vanderkallen responded that Parson was "clenching his fist, his chest puffed out, ready to fight." The trial court accepted the prosecutor's explanation that she had instructed the officer to not discuss any physical contact that Parson had with police officers during their encounter, and observed her reaction to the officer's response to her question.

When the trial court has made a reasoned evaluation of the prosecutor's reasons for her conduct, the reviewing court defers to the trial court's determination of a prosecutor's credibility. (Cf. *People v. Mills* (2010) 48 Cal.4th 158, 175-178 [reviewing court defers to trial court's assessment of prosecutor's credibility in *Wheeler-Batson* claims if it made

15

a sincere and reasoned effort to evaluate the nondiscriminatory claims offered].) The record also supports the trial court's findings that the prosecutor erred when she allowed Campa to testify that after he and Vanderkallen contacted Parson, Parson "clenched his fist and started puffing his chest and became stiff," made a speaking objection that told the jury that Palmer had given a statement to police officers that was not admitted in evidence, and asked the jury to "protect the victim that wasn't here to talk to you" and "do the right thing; that you look after the safety of your community." The trial court did not find that the prosecutor's conduct was deceptive or reprehensible. Rather, the trial court's comments, including advising the prosecutor about correct trial practice, indicate that the court viewed the prosecutor's errors as unintentional.

The record does not support a finding that it is reasonably probable that a result more favorable to the defendant would have been reached in the absence of prosecutorial error. (*Wallace*, *supra*, 44 Cal.4th at p. 1071; *Watson*, *supra,* 46 Cal.2d at p. 836.) The trial court sustained objections to the "clenching his fist, his chest puffed out, ready to fight" statements and struck those statements from the record. The trial court instructed the jury to disregard those questions and the answers that were stricken from the record. With respect to the speaking objection, the trial court instructed the jury that statements by the attorneys were not evidence and the jury was not to consider them. The jurors were also instructed not to let bias, sympathy, prejudice or public opinion influence them, and to ignore arguments to which the court had sustained objections and had ordered stricken from the record. "It is axiomatic that '[j]urors are presumed able to understand

16

and correlate instructions and are further presumed to have followed the court's instructions.' " (*People v. Hernandez* (2010) 181 Cal.App.4th 1494, 1502.)

Parson argues that because the jury announced that it was deadlocked after deliberating for three days, the errors were prejudicial. Parson contends that the evidence was not "lopsided" in the prosecution's favor but, rather, that the case was extremely close, noting that the testimony of the two witnesses who were the closest to the action absolved him of culpability.

We are not persuaded by this argument. While it is true that Villarreal and Beck recanted their initial statements to the police, instead claiming at trial that Parson held the knife by his side and did not come closer than within 10 or 20 feet from Palmer, the jury also heard their initial statements to the police. Beck told police that Parson was swinging the knife at Palmer and was able to get within three to five feet of him. Villarreal said that Parson had come very close to Palmer and appeared to be trying to stab him. In addition, the jury heard a contemporaneous 911 call in which another eyewitness, Nancy Marquez, said that Parson was "waving the knife around right now" and "threatening a teenage kid." Marquez said that Parson had come within 10 feet of Palmer, and was chasing him with a knife. The jury could reasonably determine that Marquez's contemporaneous report corroborated Villarreal's and Beck's initial statements to police, and conclude beyond a reasonable doubt that Parson was guilty of assault with a deadly weapon.

The prosecutor's errors did not relate to the relevant issue of whether Parson had the present ability " 'to commit a violent injury on the person of another.' " (*People v.*

17

*Smith* (1997) 57 Cal.App.4th 1470, 1481.) In view of the strength of the evidence against Parson, it is not reasonably probable that a result more favorable to him would have been reached in the absence of the misconduct.

## II

## *BOYKIN-TAHL* CLAIM

### A

### *The Parties' Contentions*

Parson contends that the trial court erred in finding that the evidence was sufficient to establish that, at the time he pled guilty to attempted murder and robbery in 1992 (1992 convictions), he was properly advised of, and knowingly waived, his constitutional rights to a jury trial, to confront the witnesses against him, and to be free from compelled self-incrimination (trial rights). (*Boykin*, *supra*, 395 U.S. 238; *Tahl*, *supra*, 1 Cal.3d 122.) There is no record transcript, or signed advisement and waiver of rights, from the 1992 hearing at which he pled guilty. Parson argues that the minute order of that hearing, alone, is not sufficient to establish that the required advisements and waivers were properly made, or that they were made at all. He further contends that his prior criminal convictions resulted from plea bargains and therefore, is not relevant to his knowledge about his trial rights.

### B

### *Additional Factual Background*

In a posttrial hearing on his motion to strike his 1992 convictions, Parson testified that if he had been advised of his trial rights, he would not have pled guilty to those

18

offenses. Parson admitted that he discussed the plea agreement with his attorney and knew that he was facing a possible life sentence. The defense introduced documents from the 1992 case, including a minute order dated August 26, 1992 (the minute order). The minute order contains preprinted sentences stating that the defendant, personally, and all counsel waived a trial by jury, the trial court accepted the waiver, and the defendant was advised of and waived his rights to confront witnesses and to the privilege against self-incrimination. Boxes next to those sentences are checked with an "x." There is no record transcript of the proceeding.

The trial court noted that the courts did not use a "*Tahl*" waiver form in 1992. A written plea agreement in which Parson initialed or signed a waiver of his enumerated rights does not exist. The trial court found that the minute order showed that the case was called for trial. In addition, the court observed that Parson testified that he had discussions with his attorney and that he was aware that he was facing a possible life sentence. The court determined that Parson did not overcome the presumption that the minute order correctly reflected the court proceedings, and concluded that the minute order was sufficient to show that Parson had been adequately advised of his rights and had waived them. Based on these findings, the court denied Parson's motion to strike the 1992 convictions.

C

*Applicable Legal Principles and Standard of Review*

A trial court may not use a prior conviction to increase a defendant's sentence if the prior conviction was obtained in violation of the defendant's constitutional rights.

19

(*People v. Allen* (1999) 21 Cal.4th 424, 429 (*Allen*), citing *Burgett v. Texas* (1967) 389 U.S. 109, 114-115.) "[T]o ensure the plea was made intelligently and voluntarily, the record must show the defendant was made aware of three constitutional rights he was waiving by pleading guilty: the right to a jury trial, the right to confront the witnesses against him, and the right to be free from compelled self-incrimination." (*Allen*, at p. 434.)

The record must affirmatively disclose that a defendant who pled guilty entered his plea understandingly and voluntarily. (*Allen*, *supra*, 21 Cal.4th at p. 437.) "[E]ach of the three rights mentioned -- self-incrimination, confrontation, and jury trial -- must be specifically and expressly enumerated for the benefit of and waived by the accused prior to acceptance of his guilty plea." (*Tahl*, *supra*, 1 Cal.3d at p. 132; *Boykin*, *supra*, 395 U.S. at pp. 242, 243 [holding that an intelligent and voluntary waiver would not be presumed from a silent record].) "The failure to properly advise a defendant of his or her trial rights is not reversible 'if the record affirmatively shows that [the plea] is voluntary and intelligent under the totality of the circumstances.' " (*People v. Cross* (2015) 61 Cal.4th 164, 179, quoting *People v. Howard* (1992) 1 Cal.4th 1132, 1175 (*Howard*).) In applying the totality of the circumstances test, a reviewing court reviews the entire record, not just the record of the plea colloquy. (*Cross,* at pp. 179-180.) Previous experience in the criminal justice system is relevant to the defendant's knowledge and sophistication regarding his or her legal rights. (*Ibid.*; *Parke v. Raley* (1992) 506 U.S. 20, 37.)

D

*Analysis*

Parson argues that a minute order, alone, is not sufficient to establish that he received the required advisements and knowingly and voluntarily waived his rights. He acknowledges that there is a presumption that the clerk properly performed his or her duty and that the minute order is an accurate representation of the proceedings. (Evid. Code, § 664; *In re Lopez* (1970) 2 Cal.3d 141, 146.)

"Obviously, a reporter's transcript of defendant's waiver and plea or a waiver form signed by defendant would have provided clearer proof of an express waiver. [Citation.] Such evidence, however, is neither essential nor mandatory." (*People v. Anderson* (1991) 1 Cal.App.4th 318, 325.) The pertinent inquiry is whether the record affirmatively shows that the admission is voluntary and intelligent under the totality of the circumstances. (*People v. Mosby* (2004) 33 Cal.4th 353, 360.)

The trial court did not err when it presumed that the minute order is an accurate representation of the proceedings. The minute order shows that Parson, personally, and his counsel waived a trial by jury, that the trial court accepted the waiver, and that Parson was advised of his right to confront witnesses and his privilege against self-incrimination, and waived those rights. The record shows that Parson was in court for a jury trial and that he pled guilty after his attorney advised him that he was facing a possible life sentence if he were to go to trial. Given these circumstances, the trial court could reasonably infer that the guilty plea represented " 'a voluntary and intelligent choice among the alternative courses of action open to the defendant.' " (*Howard*, *supra*, 1

21

Cal.4th at p. 1177, quoting *North Carolina v. Alford* (1970) 400 U.S. 25, 31.) In addition, Parson was convicted of other offenses on three different occasions in the year prior to this plea. Parson's prior involvement with the criminal justice system supports a reasonable inference that he was aware of his trial rights. Under the totality of the circumstances, the record contains sufficient evidence to affirmatively show that Parson entered his guilty plea to the 1992 charges knowingly and voluntarily. (*Allen*, *supra*, 21 Cal.4th at p. 437.)

III

*ROMERO* MOTION

A

*The Parties' Contentions*

Parson claims that the trial court abused its discretion in denying his motion to strike one of his prior strikes and thus violated his constitutional right to due process. (U.S. Const., 14th Amend.; Cal. Const., art. I, § 15; *United States v. Tucker* (1972) 404 U.S. 443, 446-447.) He argues that his two prior strikes stem from a single incident in which he shot at, wounded, and robbed a liquor store clerk. He was 20 years old at the time and has not incurred any other strikes since that time. Parson contends that the trial court unduly emphasized his criminal history, giving insufficient weight to evidence showing that he has made many positive changes in his life, and to the fact that the current offense was a relatively low level felony in which no one was injured. He maintains that the denial of his *Romero* motion resulted in a disproportionate sentence for

a nonserious, nonviolent felony that usually carries a maximum four-year sentence, or may be treated as a misdemeanor.

B

*Additional Factual Background*

At the beginning of the hearing on the *Romero* motion, the trial court observed that it appeared that Parson had accomplished "a lot of good things," but that there were also some disconcerting events in his past that weighed against granting his motion. Characterizing the decision as a "close call," the trial court said that it was interested in hearing about Parson's redeeming factors and qualities.

Parson told the trial court that he changed his life in 2010. He went back to school, married, and became involved in the community. He had no criminal convictions after 2008 and successfully completed parole. Parson obtained his general education diploma, trained as an electrician, started a business, and was helping to support his family. Jones-Parson and Palmer also testified on Parson's behalf.

The prosecution entered Parson's criminal history in evidence. Parson had been involved in criminal activity since he was 15 years old. He incurred juvenile adjudications in 1988, 1989, and 1990 for robbery, brandishing a deadly weapon, and being under the influence of a controlled substance, respectively. Parson was convicted in 1991 for possession of alcohol as a minor, and on three separate occasions in 1992 for (1) having a concealed weapon in his vehicle, carrying a loaded firearm and giving false information to police, (2) vandalism, and (3) attempted murder and robbery. In 2005, he was convicted of felony child cruelty and possession of cocaine base. Parson was

23

reincarcerated on probation violations and released in January 2008. He committed the current offense in June 2011.

The trial court found that Parson had made some positive changes in his life after 2008, but that he had a lengthy criminal history and resorted to homicidal violence when he had been drinking and became upset. The trial court did not believe Parson's version of the 1992 convictions. In denying the motion to strike a strike prior, the trial court said that if it had the discretion, it would impose a 15- to 17-year sentence, but did not believe that a sentence of eight or nine years was appropriate in view of Parson's history and circumstances.

C

*Legal Standard and Standard of Review*

"[A] trial court may strike or vacate an allegation or finding under the Three Strikes law that a defendant has previously been convicted of a serious and/or violent felony, on its own motion, 'in furtherance of justice' pursuant to . . . section 1385(a)." (*People v. Williams* (1998) 17 Cal.4th 148, 158 (*Williams*); *Romero*, *supra*, 13 Cal.4th at p. 508.) An order striking such an allegation is a determination that in the interest of justice, a defendant should not be required to undergo a statutorily increased penalty based on a judicial determination of the prior felony conviction. (*Romero,* at p. 508.)

In ruling whether to strike a prior serious and/or violent felony conviction allegation under the Three Strikes law, the trial court must consider, in view of the nature and circumstances of the defendant's current felony offense, prior serious and/or violent felony convictions, and background, character, and prospects, whether "the defendant

24

may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*Williams*, *supra*, 17 Cal.4th at p. 161.) The trial court's order is reviewed on appeal under the deferential abuse of discretion standard. We consider whether the decision of the trial court falls outside the bounds of reason under the applicable law and the relevant facts. (*Id*. at p. 162.)

D

*Analysis*

Parson has not met his burden on appeal to show that the trial court abused its discretion when it determined that he should not be deemed to be outside the spirit of the Three Strikes law. The record shows that the trial court knew that it had the discretion to dismiss one of the strike priors. In declining to do so, the trial court considered Parson's criminal history, the probation reports, and the testimony of Parson, his wife, and the victim, the current offense, and Parson's background, prospects, and current circumstances. (*Williams*, *supra*, 17 Cal.4th at p. 161.)

The trial court acted within its discretion when it did not find Parson to be outside the spirit of the Three Strikes law. (*Romero*, *supra*, 13 Cal.4th at p. 508.) Parson's actions in 1992 could have resulted in the death of the liquor store clerk. In 2005, he assaulted a girlfriend's daughter and was convicted of felony child cruelty. He was placed on probation, only to be reincarcerated on probation violations. He was released from prison in 2008. Beginning in 2010, it appears that Parson was improving his circumstances. He was released from parole. He went back to school and trained as an

25

electrician.  Parson married and was helping to support his family.  His marriage, however, was not without conflict.  In June, the neighbors telephoned the police when he and his wife had a screaming argument after he locked her out of their home.  When his wife returned with her son, escalating the argument, neither the presence of the neighbors nor the knowledge that they had telephoned the police for emergency assistance deterred Parson from leaving his home, chasing his teenage stepson with a knife, and threatening to kill him.

The trial court found that after having had numerous opportunities to improve his life, Parson still resorted to homicidal violence when he became upset while inebriated.  The record supports the trial court's findings.  Parson has a history of violence spanning three decades.  In 1992, he shot a store clerk.  In 2005, he physically assaulted a teenager.  In 2011, he chased his stepson with a knife, threatening to kill him.  If his stepson had not been able to reach a place of safety, the consequences of Parson's anger and intoxication could have been deadly.

In reviewing a ruling on a *Romero* motion, the reviewing court may not reverse for abuse of discretion unless the appellant shows that the trial court's ruling was "so irrational or arbitrary that no reasonable person could agree with it."  (*People v. Carmony* (2004) 33 Cal.4th 367, 377.)  Parson has not made this showing.

IV

PRESENTENCE CONDUCT CREDIT

Parson contends that because his current offense is not a violent felony within the meaning of section 667.5, subdivision (c), he is entitled to presentence conduct credit

26

calculated under section 4019, rather than under section 2933.1, which limits credit to 15 percent of actual time. Parson does not state the amount of credit that he believes that he is entitled to under section 4019.

The People agree with Parson that section 4019 governs the calculation of credit in this case. We also agree. Absent specified circumstances not present here, assault with a deadly weapon is not deemed a violent offense within the meaning of section 667.5, subdivision (c). (*People v. Williams* (2000) 79 Cal.App.4th 1157, 1175-1176.) Parson is therefore entitled to conduct credit calculated under section 4019.

V

ASSESSMENTS

Parson contends that the trial court erred in imposing a "court security fee" under section 1465.8 in the amount of $60. He maintains that the correct amount is $40. The People agree that the $60 fee is incorrect. The People state that at the time Parson was convicted, the court security fee was $30. The People also contend that the trial court erred in failing to impose a "criminal conviction fee" in the amount of $30, as required by Government Code section 70373.

The record shows that in its written recommendations, the probation department recommended that the trial court order Parson to pay a fee of $70, consisting of the $40 "court security fee" required by section 1465.8 and the $30 criminal conviction assessment required by Government Code section 70373. The $70 figure on the probation report was interlineated and amended to $60 without any correlating adjustment in the line item amounts. In sentencing Parson and imposing fees, fines and

27

restitution, the trial court stated, "You've got $60 court security fee and no attorneys' fees, no PSI." The minute order and the abstract of judgment reflect the imposition of a $60 "[c]riminal assessment and court operations assessment."

Government Code section 70373 requires the trial court to impose a $30 assessment on every conviction for a criminal offense to ensure and maintain adequate funding for court facilities. Under section 1465.8, the trial court is required to impose an assessment to assist in funding court operations. In the past, this assessment was referred to as a "court security fee." (*People v. Phillips* (2010) 186 Cal.App.4th 475, 478; see Stats. 2011, ch. 40, § 6, eff. June 30, 2011 [changing the word "fee" to "assessment"].) The section 1465.8 assessment is imposed as of the date of conviction. (*Phillips,* at p. 478.) At the time of Parson's conviction on October 13, 2011, the amount of the section 1465.8 assessment was $40. (§ 1465.8, Stats. 2011, ch. 40, § 6, eff. June 30, 2011.)

Whether the clerk's minutes or the reporter's transcript prevails depends upon the circumstances of each case. (*People v. Smith* (1983) 33 Cal.3d 596, 599.) Because the trial court had no discretion but to impose the assessments required by section 1465.8 and Government Code section 70373, we conclude that the trial court misspoke when it referred to the $60 assessment as a "court security fee." The minute order and abstract of judgment correctly reflect the imposition of the assessments required under section 1465.8 and Government Code section 70373. However, the amount of the section 1465.8 assessment should have been $40, not $30.

28

DISPOSITION

We remand the matter to the trial court to determine the amount of conduct credit due to the defendant under section 4019, and to amend the abstract of judgment accordingly.  We also direct the trial court to impose a $40 assessment under section 1465.8 and a $30 assessment under Government Code section 70373, in lieu of the $60 "[c]riminal assessment and court operations assessment," and to amend the abstract of judgment accordingly.  As modified, the judgment is affirmed.  The trial court is directed send a copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation.

AARON, J.

WE CONCUR:


McCONNELL, P. J.


BENKE, J.