Filed 7/26/23  P. v. Cardona CA2/7
Opinion following transfer from Supreme Court

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B308787 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. VA087926) |
| v. | |
| CARLOS PEREZ CARDONA, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Lee W. Tsao, Judge.  Affirmed.

Richard Lennon, Pilar M. Escontrias and Anna Rea, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Paul M. Roadarmel, Jr., Steven D. Matthews and Noah P. Hill, Deputy Attorneys General, for Plaintiff and Respondent.

————————————

Carlos Perez Cardona appeals from the trial court's order denying his motion under Penal Code[1] section 1473.7 to vacate his 2005 conviction of corporal injury to a spouse, cohabitant, or child's parent. Cardona, who at the time of his motion faced mandatory deportation to Mexico, argues on appeal that he did not meaningfully understand the immigration consequences of his guilty plea and his attorney failed to negotiate an immigration-safe disposition that would have allowed him to avoid deportation. In our prior opinion, we rejected both arguments and affirmed. (*People v. Cardona* (May 25, 2022, B308787 [nonpub. opn.].) (*Cardona I.*)

After granting Cardona's petition for review, the Supreme Court transferred the case to us with directions to vacate our prior decision and reconsider Cardona's appeal in light of *People v. Espinoza* (2023) 14 Cal.5th 311 (*Espinoza*). In his supplemental briefing, Cardona contends his case is similar to *Espinoza* and there is "significant evidence" he would have rejected the plea offer had he understood the immigration consequences. However, Cardona has not shown he did not meaningfully understand the immigration consequences of his plea. Therefore, we do not reach the second step of the analysis under *Espinoza*—whether any misunderstanding as to the consequences of the plea constituted prejudicial error. (*Id.* at p. 319.) We affirm.

---

[1] Further undesignated statutory references are to the Penal Code.

2

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *Cardona's Plea and Conviction of Corporal Injury to a Spouse, Cohabitant, or Child's Parent*

The probation report indicated that in March 2005 Cardona was living with his ex-wife, Anna B., and their son. On the evening of March 12 Cardona and Anna got into a verbal argument. After Anna returned to her bedroom and shut the door, Cardona entered the room and pushed Anna to the floor. As she was lying on the floor, Cardona placed his knees on Anna's arms and began twisting the skin around her right arm. Cardona then grabbed Anna's arm and bit her left thumb. Cardona got up, went back into the living room, and fell asleep on a chair.

Cardona was charged in a felony complaint with one count of corporal injury to a spouse, cohabitant, or child's parent. (§ 273.5, subd. (a).) The complaint alleged further that Cardona was convicted on April 5, 2000 of misdemeanor corporal injury under section 273.5, subdivision (a).

On March 25, 2005 Cardona, represented by Mark A. Disabatino, pleaded guilty to corporal injury to a spouse, cohabitant, or child's parent. Prior to entering his plea, Cardona signed a felony advisement of rights, waiver, and plea form (*Tahl* waiver).[2] The *Tahl* waiver stated the proposed disposition was a

---

[2]    See *In re Tahl* (1969) 1 Cal.3d 122, 132 (*Tahl*). "In *Tahl* . . . this court explained that, in light of [*Boykin v. Alabama* (1969) 395 U.S. 238], 'each of the three rights mentioned—self-incrimination, confrontation, and jury trial—must be specifically and expressly enumerated for the benefit of and waived by the accused prior to acceptance of his guilty plea.'" (*People v. Allen* (1999) 21 Cal.4th 424, 434-435.)

sentence of five years' felony probation, 91 days in county jail, entry of a stay-away order from Anna, completion of 52 domestic violence counseling sessions and 240 hours of Caltrans service, and payment of a restitution fine. Cardona initialed the box stating, "[I]f I am not a citizen of the United States, I must expect my plea of guilty or no contest will result in my deportation, exclusion from admission or reentry to the United States and denial of naturalization and amnesty." He also signed the form under the statement, "I have read and initialed each of the paragraphs above and discussed them with my attorney. My initials mean that I have read, understand and agree with what is stated in the paragraph." Disabatino signed the waiver form under the statement, "I have reviewed this form with my client. I have explained each of the defendant's rights to the defendant and answered all his . . . questions with regard to those rights and this plea . . . and the consequences of the plea." The interpreter also signed the waiver form and stated he "truly translated this form to the defendant" and "[t]he defendant stated that he or she understood the contents on the form, and then initialed and signed the form."

At the plea hearing, the prosecutor orally advised Cardona of the charge against him and prior conviction allegation, the maximum penalty he faced, and the terms of the proposed disposition. Cardona confirmed he understood the proposed disposition. The court asked Cardona with respect to the *Tahl* waiver whether he went "over it with [his] attorney, sign[ed] the last page, and initial[ed] all the boxes to show [he] understood the entire document." Cardona responded, "Yes."

Cardona entered a plea of guilty and admitted the prior conviction allegation was true. The trial court signed the *Tahl* waiver, which stated on the preprinted form that the court found

4

the plea was "freely and voluntarily made with an understanding of the nature and consequences thereof." On May 2, 2005 the court suspended imposition of sentence and placed Cardona on five years' formal probation with the conditions set forth in the negotiated plea agreement.[3]

B.    *Cardona's Motion To Vacate His Conviction*

On January 17, 2020 Cardona filed a motion to vacate his 2005 conviction under section 1473.7, subdivision (a)(1). According to Cardona, when he pleaded guilty to a violation of section 273.5, subdivision (a), he "was not aware that any adverse immigration consequences would or could result from the conviction." (Capitalization omitted.) Cardona averred further, "My attorney failed to disclose to me that a conviction of Penal Code §273.5(A) could result in my deportation or exclusion from the United States," and "at no moment was I notified or made aware that the conviction had negative immigration implications or consequences." (Capitalization omitted.) Moreover, had he been aware of the adverse immigration consequences, he "would not have pled on the charges, as [he] would be at risk of losing [his] son, friends, acquaintances and employment," and he "[w]ould have sought an alternative plea, even if it meant serving a longer jail sentence or a higher fine." (Capitalization omitted.) Cardona argued in his motion that in light of his circumstances, "[i]t would have been entirely rational" for him to reject any plea offer that did not allow him to stay in the United States and he

---

[3]    The May 2, 2005 transcript was destroyed by the court reporter pursuant to Government Code section 69955, subdivision (e).

5

was prejudiced because he would not have entered into the plea had he known he would be deported.[4]

Cardona was represented by new counsel at the October 22, 2020 hearing on his motion to vacate. Cardona testified he was taken into custody at the time of his March 12, 2005 arrest, and he was still in custody at the time he was sentenced after entering his guilty plea. Disabatino reviewed the proposed plea with Cardona with the assistance of a Spanish language interpreter. When asked whether Disabatino discussed the immigration consequences of the plea with him, Cardona answered, "It could be possible. . . . But I don't remember." Cardona added that had he discussed the immigration consequences with his attorney, he would have remembered. Further, if he had known the consequences, he would not have pleaded guilty. Cardona acknowledged he entered a plea of no contest to misdemeanor domestic violence in 1996 and to corporal injury to spouse, cohabitant, or child's parent in 2000, but he was not aware of the immigration consequences of either plea.[5] When asked whether the trial court advised him in 1996 and 2000 of the immigration consequences, Cardona responded, "I really don't. Possibly he did tell me, but I don't remember."

On cross-examination, Cardona testified that at the time of the plea he wanted to get out of custody as soon as possible, explaining, "I wanted to get out quickly because of my concern

---

[4]  In his motion to vacate (but not his declaration), Cardona asserted he first learned of the immigration consequences when he consulted an immigration attorney in 2015 to obtain permanent legal residency in the United States.

[5]  Cardona did not seek to vacate his 1996 or 2000 misdemeanor convictions.

that I had custody of my baby. I had him until that date, and that was the biggest thing I had. . . . My biggest fear was with the mother because the mother was taking psychiatric medicine. My worry was only to get out." Cardona acknowledged he expressed to his attorney that he wanted to get out of custody to be with his child (who was then six years old). Cardona was hoping his attorney would obtain a disposition under which he would not need to go to prison for a long time. But he also testified he would have taken more time in custody instead of being deported. At the time of the hearing on his motion to vacate, Cardona's son was in the Army based in Texas.

Cardona acknowledged he initialed and signed the *Tahl* waiver, but he added, "[Disabatino] just told me 'put your initials' and that's all, but I never got to read it nor did he read it to me in detail, what it said." Cardona was "sure" the interpreter did not read the immigration advisement portion of the *Tahl* waiver to him. Cardona recalled being advised at the time of his plea of his right to a jury trial, the consequences of a violation of probation or parole, and that his felony conviction could enhance the sentence for a future conviction, but as to whether he was advised of the immigration consequences, Cardona stated, "I don't remember."

The People called Disabatino, who testified that with the assistance of a Spanish-language interpreter, he read the entire form to Cardona, including the immigration advisement.[6] Disabatino read the advisement "exactly word for word"; Cardona

---

[6]     The trial court found Cardona waived the attorney-client privilege by arguing in his motion to vacate that he did not understand the immigration consequences of his plea.

had no questions for him; and Cardona initialed the box next to the immigration advisement after Disabatino read the advisement to him. Cardona told Disabatino his main concern was to "get out soon" because his ex-wife "had serious mental issues" and "he needed to get out and take care of his six-year-old who he claimed he had full custody of."

After hearing counsel's argument, the trial court denied Cardona's motion. The court explained, "[W]e have [Cardona] denying in a blanket fashion that he knew of the immigration consequences at the time that he entered his plea in 2005; However, . . . all the other testimony and evidence in this case indicates otherwise. . . . [¶] . . . He filled out a *Tahl* waiver . . . in which he put his initials next to the paragraph that he will be deported. . . . An interpreter . . . signed the last page of that document indicating that the interpreter interpreted the contents of that form. . . . [¶] Mr. Disabatino indicated that he had went over that section of the *Tahl* waiver . . . advising [Cardona] that he will be deported. . . . [¶] He was advised by the court during the plea that he will be deported. He was asked if he understood the potential consequences, and he said, 'Yes.' . . . [¶] There is simply no . . . contemporaneous evidence that corroborates [Cardona's] assertions here. [¶] . . . [¶] And what appears to me to have happened is that, by your own testimony here, you were primarily interested in getting home to your family, and rightly so, but that doesn't mean that you did not know the immigration consequences. . . . [¶] I believe that you were advised of the immigration consequences; you knew them, but you took the plea anyway in order to get home to your family. And that's perfectly understandable and it's unfortunate that you find yourself in this position today, many years later, but under the law, you have not established by a preponderance of the evidence that you did not

8

meaningfully understand the consequences of your plea, and the motion is denied."

Cardona timely appealed.

## DISCUSSION

A.  *Governing Law and Standard of Review*

Section 1473.7, subdivision (a)(1), "allows noncitizens who have served their sentence to vacate a conviction if they can establish by a preponderance of the evidence that their conviction is 'legally invalid due to prejudicial error damaging [their] ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a conviction or sentence.'"[7] (*Espinoza, supra*, 14 Cal.5th at p. 316; accord, *People v. Rodriguez* (2021) 68 Cal.App.5th 301, 305, 308, 310; *People v. Rodriguez* (2021) 60 Cal.App.5th 995, 1002.) "A successful section 1473.7 motion requires a showing, by a preponderance of the evidence, of a *prejudicial* error that affected the defendant's ability to meaningfully understand the actual or potential immigration consequences of a plea." (*People v. Vivar* (2021) 11 Cal.5th 510, 517 (*Vivar*); see § 1473.7, subd. (e)(1) ["The

---

[7]  Assembly Bill No. 1259 (2021-2022 Reg. Sess.) amended section 1473.7, subdivision (a)(1), effective January 1, 2022, to expand relief to include vacation of a sentence. (Stats. 2021, ch. 420, § 1.)  The amended section provides as to the basis for a motion to vacate, "The conviction or sentence is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of *a conviction or sentence*." (Italics added.)  The amendment is not at issue here.

court shall grant the motion to vacate the conviction or sentence if the moving party establishes, by a preponderance of the evidence, the existence of any of the grounds for relief specified in subdivision (a)."].)

"To prevail under section 1473.7 . . . [t]he defendant must first show that he did not meaningfully understand the immigration consequences of his plea. Next, the defendant must show that his misunderstanding constituted prejudicial error." (*Espinoza, supra*, 14 Cal.5th at p. 319.) "[S]howing prejudicial error under section 1473.7, subdivision (a)(1) means demonstrating a reasonable probability that the defendant would have rejected the plea if the defendant had correctly understood its actual or potential immigration consequences." (*Vivar, supra*, 11 Cal.5th at p. 529; accord, *Espinoza*, at p. 316; *People v. Rodriguez, supra*, 60 Cal.App.5th at p. 1003 ["A defendant requesting relief under section 1473.7 bears the burden of establishing by a preponderance of evidence that there is a reasonable probability that he or she would not have entered into the plea agreement if he or she had meaningfully understood the associated adverse immigration consequences."].) Any claim of prejudicial error must be supported with objective evidence. (*Espinoza*, at p. 321; accord, *Vivar*, at p. 530 ["[W]e have long required the defendant corroborate such assertions with '"objective evidence."'"].) "Objective evidence includes facts provided by declarations, contemporaneous documentation of the defendant's immigration concerns or interactions with counsel, and evidence of the charges the defendant faced." (*Espinoza*, at p. 321.)

We independently review the trial court's ruling on a section 1473.7 motion. (*Vivar, supra*, 11 Cal.5th at p. 52; *People v. Lopez* (2021) 66 Cal.App.5th 561, 574 ["a motion to withdraw a

10

plea under section 1473.7 is reviewed independently rather than for abuse of discretion"].) "'[U]nder independent review, an appellate court exercises its independent judgment to determine whether the facts satisfy the rule of law.' [Citation.] When courts engage in independent review, they should be mindful that "'[i]ndependent review is *not* the equivalent of de novo review . . . .'" [Citation.] An appellate court may not simply second-guess factual findings that are based on the trial court's own observations. . . . In section 1473.7 proceedings, appellate courts should . . . give particular deference to factual findings based on the trial court's personal observations of witnesses." (*Vivar*, at pp. 527-528; accord, *Espinoza*, *supra*, 14 Cal.5th at pp. 319-320; *People v. Ogunmowo* (2018) 23 Cal.App.5th 67, 76 [on independent review, "[w]e accord deference to the trial court's factual determinations if supported by substantial evidence in the record, but exercise our independent judgment in deciding whether the facts demonstrate trial counsel's deficient performance and resulting prejudice to the defendant"].) However, where the trial court does not conduct an evidentiary hearing, "there is no basis for deference." (*Espinoza*, at p. 320.) Rather, "'it is for the appellate court to decide, based on its independent judgment, whether the facts establish prejudice under section 1473.7.'" (*Ibid*; accord, *Vivar*, at p. 528.)

B.     *Cardona Failed To Meet His Burden To Show an Error Damaging His Ability To Meaningfully Understand the Immigration Consequences of His Plea*

On appeal, we review whether Cardona met his burden to establish "he did not meaningfully understand the immigration consequences of his plea." (*Espinoza, supra*, 14 Cal.5th at p. 319; accord, *Vivar, supra*, 11 Cal.5th at p. 529.) "[T]he focus of the

11

inquiry in a section 1473.7 motion is on the '*defendant's own error in . . .* not knowing that his plea would subject him to mandatory deportation and permanent exclusion from the United States.'" (*People v. Mejia* (2019) 36 Cal.App.5th 859, 871.) Cardona did not meet his burden.

In *Espinoza, supra*, 14 Cal.5th at page 320 the Supreme Court concluded the defendant (Espinoza) did not meaningfully understand the immigration consequences of his plea agreement because the trial court only provided a "general advisement under section 1016.5 that his conviction may have immigration consequences," and Espinoza's attorney did not advise Espinoza that pleading no contest to the charges would result in deportation. (See *People v. Alatorre* (2021) 70 Cal.App.5th 747, 770 ["There is little in the record to establish Alatorre's priorities in discussing a plea deal with his defense counsel, and indeed, part of his claim is that he spoke infrequently with his defense attorney and that another attorney actually communicated the prosecutor's offer to him"].)

Here, by contrast, Disabatino testified at the evidentiary hearing that he read the immigration advisement on the *Tahl* waiver "word for word" to Cardona, and Cardona had no questions for him. The advisement on the *Tahl* waiver informed Cardona he "must expect" his plea "will result in my deportation, exclusion from admission or reentry to the United States, and denial of naturalization and amnesty." (See *Vivar, supra*, 11 Cal.5th at p. 521 ["To warn merely "'that his plea might have immigration consequences,'" in circumstances where the consequences were 'certain,' was 'constitutionally deficient'"]; *People v. Superior Court* (*Zamudio*) (2000) 23 Cal.4th 183, 204 ["advising a defendant that a no contest plea may in the abstract have immigration consequences, cannot be

taken as placing him on notice that, owing to his particular circumstances, he faces an actual risk of suffering such"].) The interpreter signed the *Tahl* waiver form where it stated he had translated the form for Cardona, and Disabatino confirmed the interpreter assisted him in reading the entire form to Cardona. Cardona initialed the box next to the immigration advisement that stated his plea "will" result in his deportation. When the court at the plea hearing inquired of Cardona whether he reviewed the *Tahl* waiver with his attorney and "understood the entire document," Cardona responded in the affirmative. Moreover, the prosecutor orally advised Cardona of the immigration consequences of his plea, and Cardona acknowledged he understood the consequences and had no questions. In her advisement, the prosecutor also advised Cardona that if he was not a citizen of the United States, his plea "will" cause him to be deported and suffer other adverse immigration consequences. This is in stark contrast to *Espinoza*, in which the defendant's attorney failed to advise him of the immigration consequences and "the court made no further inquiry into Espinoza's understanding or offer to answer any questions he might have had." (*Espinoza, supra*, 14 Cal.5th at p. 318.)

The *Espinoza* court further observed that following his plea agreement, Espinoza started his own business, became an active member of the community, and knowingly subjected himself to the scrutiny of immigration officials, which conduct was inconsistent "with the behavior of a person who understood that his convictions effectively ended his lawful resident status." (*Espinoza, supra*, 14 Cal.5th at p. 318; see *People v. Alatorre, supra*, 70 Cal.App.5th at p. 770 ["It goes without saying that someone who understood his criminal conviction made him

13

automatically deportable would not voluntarily contact immigration authorities and advise them of his presence in the country"].) Unlike Espinoza, Cardona did not state in his declaration or present any evidence at the hearing that he became an active member of the community, sought to become a lawful permanent resident, or otherwise acted consistent with an understanding that he was not subject to deportation.

We agree with the trial court that Cardona's conclusory assertion that he did not meaningfully understand the immigration consequences of his plea does not meet his burden.[8] Although Cardona testified he did not remember being advised of the immigration consequences and would not have pleaded guilty had he known, the trial court did not find Cardona's account credible, relying on Disabatino's testimony, the interpreter's attestation that the *Tahl* waiver was interpreted for Cardona, and the in-court immigration advisement. Further, the court found Cardona was "primarily interested in getting home to [his] family" and knew of the consequences but "took the plea anyway in order to get home to [his] family." This finding was supported by Cardona's testimony that he was eager to be released to be with his six-year-old son who was in his custody, which Disabatino confirmed was Cardona's main concern. We defer to the court's credibility findings, which it made after hearing the testimony of Cardona and Disabatino. (*Espinoza, supra,*

---

[8] It is undisputed Cardona's conviction under section 273.5, subdivision (a), made him deportable. (See *People v. Bravo* (2021) 69 Cal.App.5th 1063, 1073 ["A conviction under section 273.5 is an aggravated felony for the purpose of the federal Immigration and Nationality Act . . . . One convicted of an aggravated felony is presumptively deportable."].)

14

14 Cal.5th at p. 320 ["[w]hen courts engage in independent review, they must give deference to the trial court's factual determinations"]; *Vivar, supra*, 11 Cal.5th at pp. 527-528 [same]; *People v. Martinez* (2013) 57 Cal.4th 555, 565 ["[i]t is up to the trial court to determine whether the defendant's assertion is credible"].)

Cardona relies on *People v. Patterson* (2017) 2 Cal.5th 885 in arguing the trial court should have granted the motion to vacate because Disabatino failed to provide Cardona any immigration advice beyond the advisement in the *Tahl* waiver. In *Patterson*, however, the Supreme Court held the immigration advisement did not bar the defendant's motion to withdraw his guilty plea based on his mistake as to the immigration consequences because the court's advisement only provided the plea "'may'" have adverse immigration consequences. (*Id.* at pp. 895-896.) Here, the written advisement in the *Tahl* waiver (as well as the prosecutor's oral advisement) advised Cardona that his plea of guilty or no contest "will" result in his deportation and other adverse immigration consequences. Thus, although the advisements were not tailored to Cardona's case, they placed Cardona on notice that he faced deportation and other consequences if he entered a guilty plea.

## DISPOSITION

The order denying Cardona's motion to vacate his conviction is affirmed.

FEUER, J.

We concur:

PERLUSS, P. J.

SEGAL, J.